## Sanders, Chief Clerk of House of Representatives, v. Talbott, Auditor of Public Accounts, et al.

(Decided June 15, 1934.)

LESLIE W. MORRIS and MARION RIDER for appellant.

BAILEY P. WOOTTON, Attorney General, F. M. BURKE, Assistant Attorney General, and CLIFFORD E. SMITH for J. Dan Talbott.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Mr. J. Erwin Sanders is the chief clerk of the House of Representatives. As such officer, and as authorized

by subdivision 2 of section 1991, Kentucky Statutes, on May 25, 1934, he drew a requisition on the appellee, J. Dan Talbott, auditor of Kentucky, for $182, for his services as such chief clerk, for seven days from May 16th to May 22d, inclusive. The auditor refused to honor the requisition, whereupon Mr. Sanders asked the Franklin circuit court, by mandamus, to compel him to do so, and upon that relief being denied Mr. Sanders has prosecuted this appeal.

This controversy has resulted in part from an architectural difference between our present state capitol and the one occupied when our present Constitution was adopted. There was but one door to the House chamber of the capitol then in use and not anticipating a changed condition under which the House of Representatives might sit in a House chamber having more than one door, the constitutional convention wrote into section 249 of our present Constitution a provision that the House of Representatives should never elect, appoint, employ, or pay for exceeding one doorkeeper, and now since the House of Representatives meets in our present Capitol, which has more than one door to the House chamber, it has found itself in need of more doorkeepers to enable it to prevent such intrusion into the chamber as would seriously hamper it in the orderly conduct of its deliberations. The coming of typewriters, stenographers, dictaphones, etc., and the quickened tempo of things generally has vastly increased the volume of legislative business coming before the General Assembly for its consideration, as is clearly shown by the fact that the published acts of the four regular sessions of the General Assembly in the years 1894, 1896, 1898, and 1900 aggregate but 802 pages, while those of the regular session of 1934 alone consists of 1,106 pages, and the aggregate of the last four regular sessions is 4,003 pages. Thus we see the General Assembly is now doing five times as much work as formerly. These rapidly multiplying activities have caused the General Assembly to need more help than it is permissible for it to employ under section 249 of the Constitution. Thus there has arisen the problem of the "extra help." This problem, in first one phase and another, has reached this court in the following cases: McDonald v. Norman, Auditor, 95 Ky. 593, 26 S. W. 808, 16 Ky. Law Rep. 137; Walker v. Coulter, Auditor, 113 Ky. 814, 68 S. W. 1108, 24 Ky. Law Rep. 530; James, Auditor, v. Cromwell, 129

Ky. 508, 112 S. W. 611, 33 Ky. Law Rep. 1024; Shanks, Auditor, v. Julian, 213 Ky. 291, 280 S. W. 1081; Shanks, Auditor, v. Howes, 214 Ky. 613, 283 S. W. 966.

A history of section 249, Kentucky Constitution, and a review of the cases that had before then arisen under it, may be found in Shanks v. Julian, supra. That the General Assembly needs this "extra help" is not seriously disputed. Certainly its solemn determination of that need should not be set aside except for the constitutional mandate which we must all obey.

In Shanks, Auditor, v. Julian, 213 Ky. 291, 280 S. W. 1081, the employment of this "extra help" pursuant to a joint resolution of both Houses was held ineffectual because of section 249 of the Constitution. Thereupon the General Assembly, by chapter 69 of the Acts of 1926, so amended section 1991, Kentucky Statutes, as to increase the pay of help it was permitted to employ, with a tacit understanding that the permissible help whose pay was thus increased would use such increase to pay for other help which the General Assembly needed, but was not permitted to elect, appoint, employ, or pay for, by section 249 of our Constitution.

In Shanks, Auditor, v. Howes, 214 Ky. 613, 283 S. W. 966, this increase in the pay of the permissible help was held valid. By that amendment of section 1991, Kentucky Statutes, the pay of the chief clerk of the House of Representatives was increased to $26 per day. Mr. Sanders, as chief clerk of the present House of Representatives has during this, the year 1934, drawn the following sums for the following services:

73 days of regular session at $26.00 per day under provision of section 1991 Ky. Stats. $1,898.00

7 days of special session, May 9th to 15th, inclusive, at $26.00 per day, under provision of section 1991 Ky. Stats. .............. 182.00

Keeping, preserving and furnishing journal of regular session of House of Representatives 7,305 pages at 25c per page, under section 1989a-1 Ky. Stats. .............. 1,826.25

30 days comparing journal and reading proof at $26.00 per day, under section 1989a-2 Ky. Stats. ............................ 780.00

Bonus voted him at regular session .......... 300.00

Total                                $4,986.25

Thus when Sanders presented his requisition for services during the present extra session, for the seven days from May 16th to May 22d, inclusive, the auditor declined to pay it, because by so doing the amount drawn from the treasury by Mr. Sanders during 1934 would amount to $5,168.25, which would be $168.25 more pay than any public officer, except the Governor, is permitted to receive in any one year. See section 246, Ky. Const.

This section of our Constitution has been construed in the following cases: Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157; Shipp v. Bradley, 210 Ky. 51, 275 S. W. 1; Com. v. Nunnelley, 211 Ky. 409, 277 S. W. 506; Carl v. Thiel, 211 Ky. 328, 277 S. W. 485; Davis v. Walker, 212 Ky. 379, 279 S. W. 654; Holland v. Fayette County, 240 Ky. 37, 41 S. W. (2d) 651; Taylor v. Todd, 241 Ky. 605, 44 S. W. (2d) 606; Com. v. Coleman, 245 Ky. 673, 54 S. W. (2d) 42; Boyd County v. Boyd Fiscal Court, 247 Ky. 183, 56 S. W. (2d) 959; City of Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092; Breathitt County v. Cockrell, 250 Ky. 743, 63 S. W. (2d) 920.

Is the Chief Clerk of the House a Public Officer?

Mr. Sanders argues he is not a public officer, as that term is used in section 246 of our Constitution. In Shanks, Auditor, v. Howes, 214 Ky. 613, 283 S. W. 966, 968, after giving an elaborate reason for so doing, we held:

"The chief clerk of the House of Representatives is a 'public officer' within the meaning of that term as used in section 235 of the Constitution."

Having so held, as regards section 235, Kentucky Constitution, it would be very difficult to find a reason for holding otherwise, as regards section 246 of the same document. In that case Howes was held not to be within the operation of section 235, not because he was not a public officer, but because he was not a public officer having a fixed term, and could be summarily removed at any time without notice and without cause.

The Present Plan of Operations.

It is stipulated that this resolution was adopted by the House of Representatives at its regular 1934 session:
"Be It Resolved by the House of Representatives That the Speaker be and he is hereby empowered

to employ such assistance in and about the House Chamber during the session of the General Assembly, as to him, may seem advisable under the provisions of Chapter 69, Session Acts of 1926.''

There is in this record a list of 29 employees of the House of Representatives, employed and now at work for it pursuant to that resolution, and the pay per day allotted to each. It is stipulated that it is true. When that daily pay roll is added it amounts to $143.50, and when the daily pay roll of the twelve employees, permissible by section 249 of the Constitution, is footed up at the sums allowed per day by section 1991, Kentucky Statutes, it amounts to $150. Thus the General Assembly has provided by law (section 1991 Ky. Stats.) that the twelve employees section 249 of the Constitution permits the House to have, shall be paid an aggregate of $150 per day, and this $150 is now collected and divided under a sort of ''gentlemen's agreement'' among the 29 employees of the House, so that the 12 employees that may be called the ''permissible help'' and the 17 other employees the House has found it needs and that may be called ''extra help'' get an agreed wage satisfactory to them, and there is a surplus of $6.50 per day to take care of any incidental expense the operation of the plan may entail. That seems to be agreeable to both the ''permissive help'' and the ''extra help,'' and has in the judgment of the House enabled it to operate to better advantage. Under this plan Mr. Sanders gives up $16 per day of the $26 he draws, and that $16 is divided and used to pay $8 per day to his stenographer, and $8 per day to a man who serves the House in the capacity of ''bill-book clerk.''

In like manner the $1,826.25 that was paid him for keeping, preserving, and preparing the journal was divided between Mr. Sanders and two men who assisted him therein, so that each got one-third thereof, and the $780 allowed him for proof reading was divided between him and a man who assisted him in that work; the assistant receiving $360, which left Mr. Sanders $420. How the $300 bonus was divided does not appear.

### Credits Claimed.

Mr. Sanders insists that he should be allowed credit for the sums he thus gave up and paid to others, and bases his argument in part upon the language of section

246 of the Constitution. We are quoting section 246, and shall italicise the words on which he relies.

"No public officer, except the governor, shall receive more than five thousand dollars [$5,000.00] per annum as compensation for official services, *independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law.* The general assemby shall provide for the enforcement of this section by suitable penalties, one of which shall be forfeiture of office by any person violating its provisions."

He argues that the effect of what he is doing is that he is employing assistants to enable him to do work that the House, after experience, has found he is unable to do alone. That is a forceful argument, but the answer is those assistants for whose pay a public officer may be given credit in determining when he has received the $5,000 salary, which he must not exceed, are by the terms of section 246 required to be *legally authorized assistants which shall be fixed and provided for by law,* and it is by section 249 of our Constitution provided that no such assistants, as those to whom Mr. Sanders has paid this money, shall be elected, appointed, employed, or paid for; therefore in computing his salary no credit can be allowed him for what he has paid them.

### The $300.00 Bonus.

Mr. Sanders alleges the $300 bonus that was voted him was not received as salary, and hence should not be counted, but section 3 of our Constitution provides that no grant of emoluments shall be made to any man or set of men except in consideration of public services. Therefore, this bonus should only be paid to him for his public services, and it must be included in the computation.

### His Traveling Expenses.

Mr. Sanders estimates his traveling expenses at $60, and he is asking credit for that. We know of no law for the deduction of his traveling expenses; he has called our attention to none, and this credit cannot be allowed.

### The $13.75.

Mr. Sanders has received $4,986.25, which is $13.75 less than the $5,000 he may receive, but it is stipulated

that when he presented his requisition for $182, the auditor offered to issue to him a warrant for $13.75, and he declined to receive it. This sum should be paid him whenever he is willing to accept it.

## Conclusion.

The House of Representatives has after experience learned how necessary this "extra help" is to it and has devised the plan we have outlined in order that it may by the use of such "extra help" operate to better advantage, and we regret that circumstances are such that we must do anything that may hamper or embarrass it in any way, but we must obey the Constitution, which the members of this court have sworn to uphold.

We have found no error in the record, and are regretfully compelled to affirm the judgment.

The whole court sitting, except Ratliff, J.