## Alvey v. Brigham et al.

April 26, 1940.

Rehearing Denied June 6, 1941.

William David Becker, Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellant.

Hal O. Williams and Lawrence S. Poston for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant, resident and taxpayer of Louisville, for himself and others of a class, filed suit seeking to enjoin the Trustees of the Louisville Free Public Library from paying the named appellee more than $5,000 for the latter's services as secretary and librarian. The petition sets out in detail, laws, ordinances and the by-laws of the Board, under which the library was established, is operated, and the functions and duties of the secretary-librarian. Appellant contends that Mr. Brigham is an officer within the purview of Section 246 of the Constitution, which, in so far as is pertinent, reads: "No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services."

A special act of the legislature of 1871 Loc. & Priv.

Acts 1871, c. 1947, created the Public Library of Kentucky, authorizing it to raise maintenance funds by means of a lottery, in which manner it accumulated something over $400,000. In 1878 a special act incorporated the Polytechnic Society of Kentucky, Loc. & Priv. Acts 1877-78, c. 1024, and the Public Library conveyed to it all its property. Subsequently the Society was changed to Louisville Public Library, and became its successor in rights and properties.

In 1901 the city officials began communications with Mr. Andrew Carnegie, who agreed to donate $250,000 for building and equiping a library, on conditions that the city furnish land necessary for the building, secure legislation for the establishment of a free public library, and enact necessary city laws for raising by taxation of not less than $25,000 annually, for maintenance purposes. Mr. Carnegie evidently desired the institution to be free and public.

By an Act of 1902, Ch. 71, p. 158, the Louisville Free Public Library was created. Amendments were added in 1918 and 1938, all of which are now Sections 2801b-1 to and including 2801c-2, Kentucky Statutes 1936 and Baldwin's Supp. 1939. After passage of this act the city adopted ordinances meeting the approval of Mr. Carnegie, who made the gift.

When the Louisville Public Library was created its predecessor, a private corporation, owned a building on Fourth Avenue, wherein it conducted a library. The building was then, and has since been occupied by a mercantile establishment. Under a contract between the two Louisville libraries the building was leased to the new concern for 99 years; it thus became a part of the Free Public Library. The rents from the property were regularly turned over to the Public Library, operating in a part of the same building until completion of the library building at Fourth and York Streets.

In 1913, following litigation (Com. v. Louisville Public Library, etc., 151 Ky. 420, 152 S. W. 262) the Louisville Public Library conveyed its properties to the Free Public Library, and it thereafter received the rentals. At this point we may say that it is shown that for the fiscal year 1937-38 the funds for the use of the Louisville Free Public Library were made up as fol-

lows: City taxes, $146,764.24; rent, $56,000; fines and fees, $5,281.52; county contract, $9,000, the latter item growing out of the use of the library by county residents; Section 2801c-1, Kentucky Statutes. It will thus be seen that if our surmise as to the last item be correct, more than $155,000 of the total during the exemplary year was raised by taxation.

Section 2801b-3, Kentucky Statutes Supp. 1939, provides for the election of library trustees for varying terms; for filling vacancies; making the mayor ex officio, a trustee, and defines powers and duties. The Board was empowered to make rules and regulations necessary for its government, the control, management and use of the library and its properties. By Section 2801b-4, providing first for the choosing from its members a president and vice-president, the Board was to "choose a secretary and treasurer and such other officers, agents and servants as it may deem  *  *  * necessary, and may prescribe the duties required of them, fix their compensation and may remove appointees at pleasure."

Article 7 of the by-laws of the Board provides for election of a librarian, subject to removal at any time, he to execute the orders of the Board. He was to have "direct charge of the library and its administration in all its departments; to carry out the policies adopted by the Board  *  *  * in regard to the management of the library, and perform such other duties as may from time to time be assigned him." He was to prepare annual report showing the use of the library, the receipts and expenditures of all moneys, and giving such information "as may be called for by the legislative body of the city," which was to be first submitted to the trustees, and when approved transmitted to the Board of Aldermen of the city. It was further provided that:

> "The librarian shall keep an exact and detailed account of all monies received from fines and other sources, and report the same monthly to the board  *  *  *; and shall discharge such other duties  *  *  * as may from time to time be prescribed by the board of trustees."

Digressing for a moment from a recitation of the law and ordinances, we note that shortly after the named appellee was installed, a resolution was adopted dispensing

with the services of the pro tem librarian, and providing that appellee, "by virtue of his office as permanent librarian, be recognized as secretary of the Board, charged with the duties attaching to his office, and as disbursing agent delegated with authority to sign checks and vouchers in accordance with the constitution and by-laws." Appellee is holding under an election of April 1938, as certified by the "duly elected and qualified secretary of the board of trustees, under his hand and seal."

Section 2801b-4, Kentucky Statutes, provides for the choosing of a secretary, whose duties are fixed by Article 2 of the Board's by-laws, as follows:

"The secretary shall keep a record of all meetings of the board; and shall have the custody and care of the seal and all papers and documents, except such documents and securities as shall properly be in charge of the treasurer, or in the custody of some of the standing committees or the chairman thereof. He shall give notice of all meetings; execute such documents as require his signature, and perform such other duties as may from time to time be assigned to him."

Mr. Brigham was chosen librarian in June 1931, and thereafter annually since the original appointment, and was officially appointed secretary in October of 1931. His compensation was fixed at $6,000 per annum.

The foregoing facts are set out in the petition and an amendment, it being sought to enjoin the Board from paying any more than $5,000 annually. To the petition, as amended, appellant filed demurrer; upon submission the chancellor sustained same; defendants stood on demurrer and the petition was dismissed with appeal granted. The chancellor in his opinion made part of the transcript, said:

"A public library is in my opinion a proprietary holding. This library was originally privately endowed; express provision is made for acceptance of future private endowment. Part of the present running expense comes from taxes, but I know of no law that forbids a city to levy a tax to maintain and operate its proprietary holding.

"I think the librarian exercises no function of

government, but is an employee engaged to carry out meticulously detailed policies formed by the library board. An officer within the purview of the constitutional salary limit must, in my opinion, exercise governmental functions, which in my mind the librarian does not.''

Counsel in brief for appellee contend that the judgment below should stand, because (a) in no sense of the word as used in the constitution, is Mr. Brigham an officer, since he in no wise is performing an official duty; (2) if so, it is in the performance of a duty in a proprietary and not a governmental function of the city. (b) Section 246 of the Constitution which fixes the limitation, does not apply where revenue is derived from sources other than taxes.

Taking up first the status of the free public library by the city, we are impressed with the language used in Dawson v. Knox, 267 N. Y. 565, 196 N. E. 582, to the effect ''that the line between a public office and public employment, has not been too clearly marked by judicial expression, probably because the distinction is not too clear.'' In Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092, this court remarked that it was difficult to frame an answer to the question so as to indicate clearly the line of separation, though the court there found little difficulty in deciding the question at issue, on the given state of facts. What is said of the dim line as between office and employment, applies in a measure to the distinction between proprietary and governmental functions.

Counsel point to the case of City of Lexington v. Thompson, 113 Ky. 540, 68 S. W. 477, 480, 24 Ky. Law Rep. 384, 57 L. R. A. 775, 101 Am. St. Rep. 361, in which this court held that the fixing of compensation of officers and members of the fire department by an act of the legislature was void, since such function or power was not governmental, but affecting the municipality in its private or corporate capacity. Counsel quotes from that case:

''The administration of justice, the preservation of public peace, and the like, although confided to local agencies, are essential matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas works and water works, the

construction of sewers, and the like, are matters which pertain to the municipality as distinguished from the state at large.''

Then follows a quotation from a Massachusetts court, which apparently recognized that hospitals, cemeteries, and libraries, and system of parks in Boston ''established 'for the   *   *   *   public' '' to be '' 'held more like the property of a private corporation,' and therefore protected from legislative interference.''

The Thompson case, supra, has been considerably threshed around. See Warley v. Board of Park Commissioners, 233 Ky. 688, 26 S. W. (2d) 554, in which it was criticized, and Campbell v. Board of Trustees Firemen's Pension Fund, 235 Ky. 383, 31 S. W. (2d) 620, 621, which came to the rescue of the opinion. However, the Lexington v. Thompson case has little bearing here, since it presents only the question of the right of the State by legislative fiat, to control the internal affairs of a city, ''strictly a local, and therefore a municipal governmental, function, with which the state has nothing to do.'' Campbell case, supra.

The case of Mt. Hope Cemetery v. City of Boston, 158 Mass. 509, 519, 33 N. E. 695, 698, 35 Am. St. Rep. 515, sheds little light on the subject. There a cemetery had been purchased, and was maintained by the city for the purpose of furnishing burial places for poor persons, with the right to sell lots to those able to buy. The court correctly held that while the cemetery was ''held for the benefit of the public, but in other respects is held more like the property of a private corporation.'' The court then (in dictum) classed libraries and hospitals, erected and maintained by the city, ''not   *   *   *. strictly as an agent of the state government, for the accomplishment of general public or political purposes, but rather with special reference to the benefit of its own inhabitants.''

We do not think this court, in the Thompson case, supra, committed itself on the proposition that the maintenance of the library in question here is proprietary, though we may say that following the Campbell case, supra, it may and should be free from state interference. There is no evidence here of attempt on the part of the state to dictate, control or interfere. Its acts merely delegate governmental powers.

Counsel for appellee in combating the suggestion of appellant that the function is governmental and not proprietary, and in support, cited Williamson v. Louisville Industrial School, 95 Ky. 251, 24 S. W. 1065, 15 Ky. Law Rep. 629, 23 L. R. A. 200, 44 Am. St. Rep. 243, and Ketterer's Adm'r v. State Board of Control, 131 Ky. 287, 115 S. W. 200, 20 L. R. A., N. S., 274, contends that they have no bearing because the questions therein were whether these institutions, their officers or the state, could be held liable for tortious acts of servants. They may have some bearing on the question.

Our research has shown it to be fairly well established that the operation of such a free public library under authority, and in the manner prescribed, constitutes no private or proprietary ownership, but is manifestly a governmental function. In State v. St. Louis, 318 Mo. 870, 2 S. W. (2d) 713, the Supreme Court held that its free library was a governmental institution, and its operation within the police power involving general welfare of the citizens. It went so far as to hold its maintenance to be a part of an educational system, which was perhaps correct under Missouri's Constitution. We have held otherwise on the latter proposition, because of Section 157 or 184 of our Constitution. Ramsey v. City of Shelbyville, 119 Ky. 180, 83 S. W. 116, 1136, 26 Ky. Law Rep. 1102, 68 L. R. A. 300. In Trustees Free Public Library v. Civil Service Commission, 83 N. J. L. 196, 83 A. 980, 982, the controversial question was whether or not employees of the Board were to be classified as officers under the civil service ordinances of Newark. The court held them to be such, saying that "employés of this free public library are officers in the paid services of the city of Newark seems to follow at once from the determination that the library association, properly considered is a mere municipal board, and not an independent entity, although constituted a corporation by statute * * *." The acts under which the Newark library was established and conducted, in so far as reported, do not differ materially from those here under consideration.

In Johnston v. City of Chicago, 258 Ill. 494, 101 N. E. 960, 961, 45 L. R. A., N. S., 1167, Ann. Cas. 1914B, 339 (a tort case) it was held that the driver of a truck carrying books to the library, and who had admittedly by his negligence, damaged the car of another, was an

employee of the city. The court said: "Reading the entire statute together, we think its whole scope and intent is that the library board is but a part and parcel of the city government."

In Lambert v. Board of Trustees Public Library, 151 Ky. 725, 152 S. W. 802, 807, Ann. Cas. 1915A, 180, the question presented was whether the city in appropriating money from its revenues for the maintenance of a public library violated either Section 157 or 180. We held that the appropriation of a per cent of the money raised by taxation for school purposes violated Section 180, but that such funds as were specifically raised and collected for library purposes and used for that purpose did not violate Section 157; in upholding the latter proposition we said:

> "A corporation created under a general law, for the management of a public library supported by taxation, is in no sense a private corporation; it is a public corporation, existing at the will of the legislature. And, although the question now raised seems not to have been heretofore suggested, it was incidentally * * * passed upon in Board of Education v. Board of Trustees of Public Library of Covington, 113 Ky. 234, 68 S. W. 10, 24 Ky. Law Rep. 98, and Ramsey v. City of Shelbyville, 119 Ky. 180, 83 S. W. 116 [1136], 26 Ky. Law Rep. 1102, 68 L. R. A. 300."

In City of Owensboro v. Board of Trustees, 210 Ky. 482, 276 S. W. 143, 147, involving a suit between the city and the library trustees, and in which one of the questions was whether or not the Board was estopped to assert a right to certain fines and forfeitures, we held:

> "Clearly there can be no estoppel as against a corporation charged with the performance of duties to the public, and is essentially a part of the municipal government. * * * Being therefore a public corporation, * * * owing to the public and performing for the public certain public duties, no neglect or omission of theirs as to such duties can work an estoppel against the state or any governmental agency."

The tort cases cited by appellant might, if the question were before us, throw considerable light on the

question. We have not here a question of "sovereign immunity," though it would be interesting to be apprised as to the position the Board or city might take if it were presented. In addition to the cases cited, it may be of interest to note Kentucky State Park Comm. v. Wilder, 260 Ky. 190, 84 S. W. (2d) 38, in which the writer has collated many decisions on the point. In view of the authorities cited we conclude that the library board is acting in a governmental capacity.

We take up, out of order, the third contention of appellant, which is to the effect that Section 246 of the Constitution does not apply where revenue is derived from sources other than taxes. In presenting this contention counsel assume for purpose of argument, that the maintenance of the library is a governmental function. The section does not make mention of "public funds" or "public sources," but it must be conceded that the provision related to public funds or public monies.

Counsel insists that the library board has the right to take $6,000 of the rent money if it so wishes, with which to pay the librarian and secretary, and no one should be heard to complain. Counsel by way of illustration states a supposed case where some public spirited citizen "absent sinister design" would pay the compensation out of his personal funds, and asks if that would violate Section 246. We have no such question to decide. We are not offered authority to support appellee's position, but we have been able to find support. For example, we may point to certain sections of the statute which would indicate that different sources of revenue do not constitute different funds or purpose. Section 2801b-6, which allows the levy of a tax for library purposes, provides that when such are collected they "shall  *  *  *  be passed to the credit of the library fund." Further, that "no portion of the  *  *  * fund held or raised for library purposes shall ever be applied to the support of any library not exclusively under the  *  *  *  management of the board of trustees  *  *  *."

While it is not made clear from the pleadings, from exhibits filed or from the briefs, we may assume that rents, fines and "county contract" funds have in past times rightfully been passed to the library fund, and with the tax revenues, used for the purpose of conduct-

ing a free public library. This being true, the funds thus passed become at once public funds, public monies, or monies from public sources, whichever term one chooses to apply. They are thus embraced in the inhibitive section of the Constitution under consideration. We find authority for thus treating the rent money, or donations, in Game & Fish Commission v. Talbott, Auditor, 251 Ky. 268, 64 S. W. (2d) 889. See also Louisville Bridge Comm. v. Louisville Trust Co., 258 Ky. 846, 81 S. W. (2d) 894; Wright v. Walcott, 238 Mass. 432, 131 N. E. 291, 18 A. L. R. 1242; Andrew v. Citizens' Bank, 203 Iowa 349, 212 N. W. 742, 743.

We have shown that the establishment of the library is not a proprietary function, but one of governmental proportions, and is charged with a public duty, including that of receiving and disbursing public funds, and as shown, in which the secretary-librarian plays a part. It should logically follow that Mr. Brigham is filling office.

Both parties place considerable reliance upon our recent case of City of Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092, 1093, in which the court found appellee to have been an "officer" notwithstanding the General Assembly decreed otherwise. In that case we cited and quoted largely from the case of State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A. L. R. 583, which had, as said, established five or six rules in determining the status of one rendering services of public nature. Counsel quotes the following:

"It will be perceived, and which we are convinced is true, that a public service position, in order to be an office so as to make its incumbent an officer, must be created by the Constitution, or the Legislature or a municipality under authority conferred by the Legislature.

"It must possess or contain a delegation of a portion of the sovereign power of the government to be exercised by the incumbent for the benefit of the public, and the powers and duties must be defined by the authority creating the position, and must be performed by the incumbent independently and without control of any superior public power or authority other than that contained in the law creating the position, except the functions of a deputy

officer, where the law provides for one, who acts under the direction and control of his principal and in the latter's name. * * *

"Thus we see that the invariable and certain characteristics of an office, so as to render its incumbent an officer, is one that must emanate from the sovereignty and involve the performance of some sovereign governmental duties, which the incumbent may exercise on his own initiative and not be circumscribed by directions and orders from some superior source other than those found in the law creating the office."

From this quoted portion, and the whole case, counsel deduces that in order for the court to hold appellee's position to be an office "it is necessary that it contain all the essentials laid down by this court. Each characteristic is indispensable, and if one or more of the tests is not met then the position is not an office."

A reading of numerous cases leads to the conclusion that in order to constitute one an officer within the meaning of the general use of the word, it is not necessary that there must coexist all the elements mentioned, though it would not be difficult to show that the position in question manifests the existence of all the named essentials excepting, perhaps, the oath and bond requirement.

The involved positions are specifically created by Section 2801b-4 of the Statutes and by Article No. 7 of the board's by-laws, in conformity and not inconsistent with the statute, which delegates to the city sovereign powers. The duties enforced upon and required of one filling the positions are defined directly or impliedly by legislative authority. The duties and powers here are performed and exercised by a subordinate, in an office authorized by the legislature, and by it placed under the general control of a superior body.

As to permanency, tenure or continuity, we find no case holding that one is not an officer merely because the term is not definitely established. We so wrote in the Lexington-Thompson case, supra:

"The position also must have some permanency and continuity, which means that the office itself is one of permanency and continuity, but which terms do not refer to the length of time that the incumbent may or may not serve in that capacity; for the law

creating the position might be so framed as to provide for an indefinite or a very short tenure of the individual occupant, yet the public position would continue in force until it is repealed or in some manner dispensed with by the authority that created it."

See also Shanks v. Howes, 214 Ky. 612, 283 S. W. 966; Lentz v. City Council of Augusta, 48 Ga. App. 555, 173 S. E. 406. In that case one of the circumstances which entered into consideration in distinguishing office from employment is the dignity of the position, as was true to an extent held in Mason v. Los Angeles, 130 Cal. App. 224, 20 P. (2d) 84, although a city bridge tender was held to be an officer in Pekin v. Industrial Comm., 341 Ill. 312, 173 N. E. 339, and we held in Page v. O'Sullivan, 159 Ky. 703, 169 S. W. 542, that a prison guard was an officer, though as far as one can learn he was required neither to execute bond nor take oath and acted in all matters directly under the Warden's control. In Waddle v. Hughes, 260 Ky. 269, 84 S. W. (2d) 75, we held a member of the Board of Education of an independent district to be a state officer. Here it appears that our legislature, by enactment of Section 4618-130b et seq., Kentucky Statutes Supp. 1939, has added dignity to the office of librarian.

That the oath or official bond, whether required or not, enters into the quality of the position, is discussed in the Lexington-Thompson case, and it seems to be the general rule in this and other jurisdictions, that the requirement may be considered though it is not controlling in determining the character of the position. Key v. Bond, 94 W. Va. 255, 118 S. E. 276; State ex rel. v. Board of Com'rs of Butler County, 95 Ohio St. 157, 115 N. W. 919; Coulter v. Pool, 187 Cal. 181, 201 P. 120; Lentz v. Augusta, supra; Dawson v. Knox, supra; Kosek v. Wilkes-Barre Township, 314 Pa. 18, 170 A. 279; Kingston Associates v. La Guardia, 246 App. Div. 803, 285 N. Y. S. 19.

After having read a number of decisions touching on the question, pro and con, we find it difficult to point to any one which lays down a fixed and determinative rule whereby a precise criterion might be adopted by this or any other court. We are not inclined now to adopt any irrevocable standard, but are somewhat impressed by the definition in Attorney General v. Tilling-

hast, 203 Mass. 549, 89 N. E. 1058, 17 Ann. Cas. 449, which considered the status of assistant city auditor: "It may be stated as a general rule, fairly deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent, while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements." See also Groves v. Barden, 169 N. C. 8, 84 S. E. 1042, 1043, L. R. A. 1917A, 228, Ann. Cas. 1917D, 316.

In State ex rel. Davis v. Botts, 101 Fla. 361, 134 So. 219, the court held in substance that a person in the service of the government, who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts, or duties, as a part of the legal administration of the government, is an officer and holds a public office in the constitutional meaning of the term.

It is unnecessary to carry this opinion to any greater length, since we believe we have cited sufficient sound authorities to convince us, at least, that the Louisville Free Public Library is a municipal function; that the fact that its funds are in part made up of money, not raised by direct taxation, does not make the fund any the less a governmental fund; that the secretary-librarian is filling an office, hence is an officer, within the meaning of Section 246 of the Constitution.

Since we have so concluded its meaning to be manifest, we need not again recite our views of the applicability of Section 246. We shall be content with reference to the following: Holland, Jailer v. Fayette County, 240 Ky. 37, 41 S. W. (2d) 651; Com. v. Coleman, 245 Ky. 673, 54 S. W. (2d) 42; Jefferson County v. Chilton, 253 Ky. 221, 69 S. W. (2d) 338 (Co. Atty.); Shanks, Auditor, v. Howes, 214 Ky. 613, 283 S. W. 966; Sanders v. Talbott, 255 Ky. 50, 72 S. W. (2d) 758; Herold, Clerk v. Talbott, 261 Ky. 634, 88 S. W. (2d) 303; Coleman v.

Hurst, 226 Ky. 501, 11 S. W. (2d) 133; City of Louisville v. Thomas, 257 Ky. 540, 78 S. W. (2d) 767; Board of Education of Boyle County v. McChesney, 235 Ky. 692, 32 S. W. (2d) 26; Waddle v. Hughes, 260 Ky. 269, 84 S. W. (2d) 75; Whittenberg v. City of Louisville, 238 Ky. 117, 36 S. W. (2d) 853.

That the provisions of Section 246 of the Constitution applies to municipal officers is made clear in the Thompson case (250 Ky. 96, 61 S. W. (2d) 1092) and Carroll v. Fullerton, 215 Ky. 558, 286 S. W. 847. Appellees contend that should we give construction and application of the statutes in question, as is urged by appellant, (and as we have indicated supra) such would serve to render, and renders Section 246 of our Constitution invalid and unconstitutional as to appellees, and in contravention of the Fourteenth Amendment to the Constitution of the United States, with particular reference to the appellee, the Library Commission.

We find nothing presented by appellees which would justify such conclusion. We are of the opinion that our construction of the Statutes, and of Section 246 Kentucky Constitution, does not tend to deprive, nor deprive either of the complaining parties of liberty, or property without due process of law, nor deny either equal protection of the law, as vouchsafed by the amendment, or any provision of the Federal Constitution.

It follows that the chancellor erred in sustaining the demurrer to, and in dismissing, the petition. Hence the judgment is reversed with directions to set the order aside and enter one in accordance with this opinion.

Judgment reversed; whole court sitting.