LOUIS C. LEHMANN, Jr., PLAINTIFF, v. MARY C. KANANE, SURROGATE OF UNION COUNTY, AND BOARD OF CHOSEN FREEHOLDERS OF UNION COUNTY, DEFEND-ANTS.

Superior Court of New Jersey
Law Division

Decided May 22, 1964.

118

*Mr. Walter A. Beers* for plaintiff.

*Mr. Edward O. Bauer,* County Attorney, for defendants.

FELLER, J. S. C. This is a suit brought by plaintiff to establish his right to the position of deputy surrogate of Union County. The plaintiff had been appointed to that position on November 6, 1963, effective November 7, 1963, by the outgoing surrogate, Eugene J. Kirk. Notice of the appointment was duly given to defendant board of freeholders and a bond in the amount of $15,000 was entered into, as required by *N. J. S.* 2A:5–11. The oaths of office required by *N. J. S. A.* 41:1–3 and 41:2A–6 were administered by the afore-mentioned surrogate before his term expired.

On November 18, 1963, upon assuming office, the new surrogate, defendant Mary C. Kanane, immediately notified plaintiff that she considered his appointment as deputy surrogate invalid and ineffective. Since that time defendant Kanane has disputed plaintiff's title to the office and refuses to include plaintiff in the payroll as deputy surrogate. Defendant board of freeholders has likewise refused to process the papers relating to plaintiff's appointment or to include him on the payroll as deputy surrogate. Plaintiff demands judgment declaring him to be deputy surrogate and directing defendants to include him on the payroll as deputy surrogate

at an annual salary of $11,250. The case is presently before this court on cross-motions for summary judgment.

The most important question presented in this suit is whether plaintiff had acquired tenure as deputy surrogate, as provided by *N. J. S. A.* 40:38–25.1, thereby prohibiting his removal except for just and sufficient cause. Other questions presented are whether the oath taken by plaintiff was sufficient and whether the bond to the county was defective. These issues are treated below in the reverse of their order above.

## I.

It is defendants' contention that the bond required to be given by *N. J. S.* 40A:5–34 was defective by reason of the fact that it did not contain plaintiff's signature as principal (although it was signed by the surety) and, further, that it was not submitted until November 20, 1963, after plaintiff's appointment had been revoked by the incoming surrogate. Since the filing of the bond is a condition precedent to the investiture of a particular office, *Manahan v. Watts,* 64 *N. J. L.* 465, 473 (*Sup. Ct.* 1900), defendants would conclude that plaintiff never assumed the disputed office before being notified by them that his appointment was revoked. On this point plaintiff has pointed out that *N. J. S.* 2A:5–11 provides that the "deputy surrogate * * * shall enter into a bond to the county." By the use of such wording he contends that the appointee holds the position of deputy surrogate before filing the bond and that he cannot be divested of such position by the action of an incoming surrogate in revoking his appointment before the bond has been filed. The court agrees with the latter interpretation. If defendants' contention were correct, then the question of title to the office hinges on the outcome of a race between the parties—the incoming surrogate seeking to revoke the appointment, and the appointee seeking to file his bond. Moreover, there has been no showing that the failure to furnish a bond, as required by *N. J. S.* 2A:5–11, must necessarily result in a divestiture of

the office involved. In fact, this very idea was summarily dispatched in *Bachmeier & Co., Inc. v. Semel*, 10 *N. J. Misc.* 1172, 1174, 163 *A.* 126, 127 (*C. P.* 1932), in which the court held:

"While these statutes seem quite definite, the rule has long been accepted in New Jersey and elsewhere throughout the United States on the grounds of public policy that the mere failure to file an official bond does not work a forfeiture *ipso facto*, nor vacate the office * * * ."

Furthermore, *N. J. S. A.* 40:38–2, applicable to the situation of a county clerk performing any of his duties before giving a bond, provides that if he so acts he shall be subject to a forfeiture of $100 for the use of the State, but interestingly enough, does not require forfeiture of the office.

█ The fact that the bond submitted by plaintiff lacked his signature was obviously a technical oversight on his part which has not operated to harm the public interest which the giving of a bond is designed to protect. Although there is no New Jersey law on point, there is divided authority throughout the country on whether the surety would be liable when the principal has failed to sign the bond. The great weight of modern authority holds the surety liable nevertheless. 110 *A. L. R.* 959, 960. Again, it should be remembered that the crux of this case is plaintiff's right to office and not the liability of his surety on the bond. If he has substantially complied with the prerequisites of full investiture with an office to which he is otherwise entitled, this court will not deny him his right merely because of an inadvertent oversight.

## II.

Defendants next question the sufficiency and validity of the oaths taken by plaintiff.

*N. J. S.* 41:2A–3 provides in relevant part as follows:

"Any judge of any County Court *may* administer the oaths to * * * any surrogate, deputy surrogate or special deputy surrogate." (Emphasis added)

Defendants contend that this is a mandatory prerequisite to the entering into office by the deputy surrogate. They contend that the administering of the required oath to plaintiff by the former surrogate was defective and did not operate to confer the position upon him. Plaintiff, on the other hand, contends that the use of the word "may" in the above statute indicates that a judicially administered oath is permissive. He further points out that *N. J. S. A.* 41:2–1 empowers the surrogate to administer all oaths required to be taken by law of this State. Plaintiff would conclude that since *N. J. S.* 41:2A–3 is permissive, and since he has taken the required oath before one empowered to administer it, there has been full compliance with the oath-taking requirement.

In *Harvey v. Essex County Board of Chosen Freeholders*, 30 *N. J.* 381 (1959), the court stated that in determining whether a statute is mandatory or directory, regard shall be had to the purpose and intent of the Legislature. The word "may" is ordinarily permissive or directory, and the words "must" and "shall" are generally mandatory. Such terms, however, have been held to be interchangeable whenever necessary to execute the clear intent of the Legislature. The problem is primarily one of ascertaining the intent of the Legislature. *Leeds v. Harrison,* 9 *N. J.* 202, 213 (1952); 3 *Sutherland, Statutory Construction* (*3d ed.*), *p.* 77. Such intent may be implied from the language used, or inferred on grounds of policy and reasonableness.

Words giving power or permission to do an act which concerns the public interest, when applied to a public body or officers, are to be construed as requiring the act to be done, although the phraseology of the statute be permissive merely, not peremptory, whenever there is nothing in the act save the permissive form of the expression to denote that the Legislature designed to lodge a discretion in the body authorized to act. *State v. Mayor, etc., of City of Newark*, 28 *N. J. L.* 491, 497-498 (*Sup. Ct.* 1860). In *City of Bayonne v. North Jersey, etc., Commission*, 30 *N. J. Super.* 409, 417–419 (*App. Div.* 1954), it was held that the word "may" must be given a

mandatory significance where it is employed in a statute to delegate a power the exercise of which is important for the protection of the public interest, and where it can clearly be taken from the nature and the object of the statute that a mandatory significance was intended.

In the instant case the only indication of the permissive nature of *N. J. S.* 41:2A–3 is the use of the word "may." Furthermore, this statute gives a power to do an act which concerns the public interest. In such a case the statute should be construed as being mandatory, despite the use of permissive language.

However, it would be inequitable to allow defendants to raise such an objection in view of the fact that it was their challenge to plaintiff's right to the position of deputy surrogate whch led to the court's refusal to administer the oath. In this connection it is to be noted that the cases and statutes providing that a public office shall be vacant or declared vacant in case of a failure to qualify apply only to cases where the officer is at fault. 67 *C. J. S. Officers* § 41, *p.* 195. In the present case plaintiff was not at fault.

## III.

The final question remaining with regard to plaintiff's right to the disputed office concerns his attainment of tenure in that office. *N. J. S. A.* 40:38–25.1, which gives a deputy surrogate tenure and prohibits removal except for just and sufficient cause, recites as follows:

"Any deputy county clerk or deputy surrogate in any county of the second class who has attained the age of fifty-one years, and who has been continuously in the employ of the office of county clerk or surrogate for a period of at least sixteen years, shall enjoy tenure of office, and shall not be removed therefrom except after due hearing, upon notice, for just and sufficient cause."

In the instant case plaintiff has been employed in the office of the surrogate since March 1944, a period exceeding 16 years. His employment there has been in various positions, and from

August 1951 until January 1959 he served as deputy surrogate. In January 1959, when plaintiff was more than 51 years of age, he resumed his former duties as confidential secretary-special deputy surrogate. At that time, when he discontinued his duties as deputy surrogate, he had been in the employ of the surrogate's office for a period less than 15 years. Thus, he had not acquired tenure as deputy surrogate at that time. At present he is 63 years of age. Plaintiff thus contends that since he has now been employed in the office of the surrogate for a period exceeding 16 years, and since he is more than 51 years of age, he has the protection of the tenure statute. It is defendants' contention that the position adopted by plaintiff with reference to the tenure statute could lead to ridiculous results. If this position is approved, they point out, consistency would require the court to uphold the tenure rights of an individual appointed as deputy surrogate, even if unqualified, so long as that individual has attained the age of 51 years and been employed in the surrogate's office for a period of 16 years, though in a subordinate position, and this would be so without regard for his background or experience for assuming that position. They conclude that this could not have been the intent of the Legislature when it enacted the tenure statute.

In the absence of the tenure statute it seems to be undisputed that a deputy surrogate can be dismissed by the surrogate at will. *N. J. S.* 2A:5-9 provides that:

"Any surrogate may, in his discretion and from time to time, appoint a deputy surrogate to serve at the pleasure of the surrogate and as provided in section 2A:5-5 of this title; and the deputy surrogate shall, in the absence or inability of the surrogate, have all the powers and shall perform all the duties of the office of surrogate."

Thus, plaintiff's right to the position in dispute can only be asserted if the tenure provisions of *N. J. S. A.* 40:38-25.1 apply to him.

It should be noted at this point that there was no statement attached to this statute when it was originally introduced in

the Legislature. Furthermore, there is neither legislative history nor case law to aid in the interpretation of the same.

In construing a tenure statute, however, certain fundamental principles should be considered. In the first place, the power to confer tenure of office must be conferred by statute. At common law an appointing power cannot give an appointee tenure of office beyond that of the appointing power. *Skladzien v. Board of Education of City of Bayonne,* 12 *N. J. Misc.* 602, 173 *A.* 600 (*Sup. Ct.* 1934), affirmed 115 *N. J. L.* 203 (*E. & A.* 1935). Furthermore, statutes enacted to establish tenure must be strictly construed, *Brintle v. Board of Education of City of Long Beach,* 43 *Cal. App. 2d* 84, 110 *P. 2d* 440 (*D. Ct. App.* 1941), and life tenure for public officers is the exceptional thing and will be read into a statute only if the intention of the legislature to that effect appears to be so evident as to permit of no doubt. *DeCastro v. Board of Commissioners of San Juan,* 136 *F. 2d* 419 (1 *Cir.* 1943), affirmed 322 *U. S.* 451, 64 *S. Ct.* 1121, 88 *L. Ed.* 1384 (1944).

The statute under consideration (*N. J. S. A.* 40:38–25.1, *supra*) does *not* provide that a person who has reached the age of 51 years and who has served in the office of the surrogate for at least 16 years shall acquire tenure *upon his appointment* as deputy surrogate. The statute *does* provide, however, that any deputy surrogate who has reached the age of 51 years and who has served in the office of the surrogate for at least 16 years shall acquire tenure. This wording would seem to evince a legislative intent that a person must hold the office or position of deputy surrogate when he has reached the age of 51 years and at the time he has reached the period of service of at least 16 years in the office of the surrogate. Thus the age and years requirement for tenure must be met at a time when the appointee occupies the position of deputy surrogate.

If the Legislature intended that a person should acquire tenure immediately *upon his appointment* as deputy surrogate, the statute would have so provided. The statute is silent

as to this. Consequently, the only reasonable interpretation of the statute is that a person must be a deputy surrogate at the time that the other two conditions of age and period of service apply. After reading the statute in its entirety it is evident that the apparent intention of the Legislature was to give life tenure to a deputy surrogate who had reached the age of 51 years and who had served in the office of the surrogate for at least 16 years. This interpretation of the statute is in conformity with the aforementioned rule that a tenure statute should be strictly construed, *Brintle v. Board of Education of City of Long Beach, supra,* and that life tenure for public officers is an exceptional thing and will be read into a statute only if the intention of the legislature to that effect appears to be so evident as to permit of no doubt. *DeCastro v. Board of Commissioners of San Juan, supra.* It was not the apparent intention of the Legislature to give tenure to a clerk or typist or other employee of the surrogate's office who had reached the age of 51 years and had served at least 16 years in the office, *upon his appointment* as deputy surrogate. Such an interpretation would lead to absurd results, and it is elementary that a statute should be construed to avoid absurd results. *New Capitol Bar and Grill Corp. v. Division of Unemployment Security,* 25 N. J. 155, 160 (1957).

The purpose of the statute is to give tenure protection to a deputy surrogate under certain conditions, and not to give tenure protection to *any* employee of the surrogate's office immediately upon his appointment as deputy surrogate. A person must be a deputy surrogate as a prerequisite before he can acquire tenure upon reaching the required age and period of service in the surrogate's office. The elements of tenure and duration as requisites of a public office have been held to relate to the office itself and not to the incumbent. In other words, the requirement that the position or office has some permanency and continuity has been considered to mean merely that the office itself has some permanency and continuity. 67 C. J. S. Officers § 5, *p.* 113. See also *City of Lexington v. Thompson,* 250 Ky. 96, 61 S. W. 2d 1092 (*Ct. App.*

1933); *Alvey v. Brigham,* 286 *Ky.* 610, 150 *S. W. 2d* 935, 135 *A. L. R.* 1024 (*Ct. App.* 1940).

Since the plaintiff did not meet the age and period of service prerequisites of tenure while holding the position of deputy surrogate, it is clear that he is not entitled to the protection of this statute. Since there is no tenure protection here, the deputy surrogate serves merely at the pleasure of the surrogate, and may be dismissed at will. See *N. J. S.* 2A:5–9.

## IV.

As an alternate claim for relief, plaintiff seeks to have this court declare his right to the position of confidential secretary-special deputy surrogate, a position held by him before his appointment as deputy surrogate. This claim rests upon plaintiff's assertion of Civil Service protection in this position. However, it is felt that this claim, if still in dispute, is one properly fit for the initial consideration of the Civil Service Commission. In fact, this was the position taken by the counsel for the plaintiff at the oral argument. This court is in agreement with plaintiff on this question. It has long been decided in this State that our courts will not entertain a proceeding in advance of the exhaustion of administrative remedies. *R. R.* 4:88–14; *Deaney v. Linen Thread Co.,* 19 *N. J.* 578 (1955). Thus this court will not entertain this ground for relief at the present time.

A judgment in accordance with this opinion, duly consented to as to form, or settled upon notice pursuant to *R. R.* 4:55–1, will be submitted to the court.