## Talbott, Commissioner of Finance v. Thomas et al.

Special Court of Appeals of Kentucky.

Jan. 17, 1941.

Rehearing Denied May 15, 1941.

Hubert Meredith, Attorney General and Jesse K. Lewis and A. E. Funk, Assistant Attorneys General, for appellants.

Richard Priest Dietzman and James W. Stites for appellees.

Alvin E. Evans, Clifford E. Smith, Clyde E. Reed, Samuel M. Rosenstein and J. J. Leary, amicus curiae.

OPINION OF THE COURT BY FAUREST, SPECIAL JUDGE—Reversing.

At its 1940 Session the General Assembly of the State of Kentucky passed an act entitled:

"An Act relating to the retirement of Judges of the Court of Appeals, and providing for the payment of certain public emoluments to the Judges of

the Court of Appeals after their retirement, and making an appropriation therefor, and declaring an emergency." See Acts 1940, c. 131, page 528.

Among the provisions of that act are the following:

Section 1. "After ten years or more of continuous service as a Judge of the Court of Appeals, any Judge of said Court upon reaching the age of sixty-five years, or who is now sixty-five years of age, who retires from office, either voluntarily or otherwise, shall be paid out of the State Treasury the sum of five thousand dollars ($5,000.00) per annum for the remainder of his life, which amount shall be payable monthly at the same time and in the same manner as the salaries of the Judges of the Court of Appeals are now paid. The provisions of this section shall apply to any person who retires from office as a Judge of the Court of Appeals, either voluntarily or otherwise, any time after reaching the age of sixty-five years provided such person has served as a Judge of the Court of Appeals continuously for not less than ten years prior to such retirement."

Section 2. "After sixteen years or more of continuous service as a Judge of the Court of Appeals, any person who retires from office as a Judge of said Court because of ill health, physical incapacity, or whose health or physical condition is such that continued service as a Judge of said Court would be reasonably calculated to impair the health or life of such person, who retires from office voluntarily thereafter shall be paid out of the State Treasury the sum of five thousand dollars ($5,000.00) per annum for the remainder of his life, which amount shall be payable monthly at the same time and in the same manner as the salaries of the Judges of the Court of Appeals are now paid."

Section 3. "Every Judge of the Court of Appeals hereafter retiring from office, either voluntarily or because of the expiration of his term, shall be paid out of the State Treasury at the rate of five thousand dollars ($5,000.00) per annum for a period immediately following his retirement equal to one-half of the entire time that he served as a Judge of the Court of Appeals subsequent to December 31,

1939, which payments shall be made monthly at the same time and in the same manner as the salaries of the Judges of the Court of Appeals are now paid. The payments provided to be made in this Section shall be in addition to the payments provided in Sections 1 and 2 of this Act if such person be eligible to receive payments under either of said Sections.''

The act further provided the method for carrying it into effect, and made the appropriations necessary for that purpose.

The appellant, Commissioner of Finance of the State of Kentucky, doubted the constitutionality of the act and declined to make provision for payment of the amounts appropriated by it. The appellees, six of the seven regular members of this court, instituted this suit to require the Commissioner to carry the act into effect. The appellant defended upon the ground that the act violated the Constitution and was therefore, invalid. The lower court sustained the act, except to the extent that Section 3 may be interpreted as providing for payments in excess of the limits fixed by Section 246 of the Constitution, and granted the relief sought. The case is now before us on an appeal from that judgment.

The appellant contends that the act violated Sections 3, 23, 26, 59, Subsection 18, 171, 235 and 246 of the Constitution of this state. The conclusions reached by us render it unnecessary to consider any of these except Sections 3 and 246.

Section 3 of the Constitution provides:

''All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services.''

Section 246 of that instrument is as follows:

''No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services, independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law. The general assembly shall provide for the enforcement of this section by suitable

penalties, one of which shall be forfeiture of office by any person violating its provisions.''

At the outset all the special members of this court desire to express high appreciation of the ability, industry, and integrity of the regular members of this court. Their work is arduous, and requires great knowledge of the law, and ability and skill in applying that law in the cases that come before them. We do not hesitate to say that personally we consider the present salaries of the regular members of the court entirely inadequate compensation for the services rendered. However, in deciding this case, we are bound by the provisions of the Constitution, and cannot sustain an act that offends that instrument. We must lay aside all personal views as to the wisdom of any limitations therein found, and apply its provisions as adopted.

There are certain fundamental rules that must be observed in the considertaion of the questions here presented. We quote the following from Black's Handbook of Constitutional Law:

"Every presumption is in favor of the Constitutionality of an Act of the legislature. * * * Every reasonable doubt must be resolved in favor of the statute, not against it; and the Court will not adjudge it invalid unless the violation of the Constitution is, in their judgment, clear, complete and unmistakable.'' Section 39.

"It is a cardinal rule in the interpretation of Constitutions that the instrument must be so construed as to give effect to the intention of the people, who adopted it.'' Section 48.

"It is not permissible to disobey, or to construe into nothingness, a provision of the Constitution merely because it may appear to work injustice, or to lead to harsh or obnoxious consequences or invidious and unmerited discriminations, and still less weight should be attached to the argument from mere inconvenience.'' Section 49-10.

We shall examine this act in the light of these rules.

It has been urged before us that the validity of the act depends solely upon whether it violates Section 3 of the Constitution. If that be true, and the act in no way offends any other provision of that instrument, and as-

suming for the purposes of this case that the classification of the judges that may participate in its benefits is justified, there would be little question as to its validity. Section 3 contains no limitation on the amount that may be paid to an official for his services. The limitation there is only as to the consideration for which emoluments may be granted, and which must be the rendition of public services. The official services of a judge of the Court of Appeals are unquestionably public services. So that section taken alone sets no limit on the amount that may be paid nor when it may be paid.

But the Constitutional Convention went further than this and by Section 246 it did provide a limitation upon the compensation any state officer, other than the Governor, may receive. Sections 3 and 246 are harmonious and complement each other. Section 3 declares that public emoluments shall not be granted to any one except for public services, and Section 246 that when these emoluments are granted for official services they shall not exceed $5000 per annum. That this latter provision was considered of great importance is shown by the fact it expressly directed the General Assembly to provide for its enforcement by enacting suitable penalties for its violation, one of which should be forfeiture of office.

The regular salary of each judge of the Court of Appeals is, and has been for many years, $5000 per annum. The retirement pay provided by the Act of 1940 constitutes emoluments over and above the salary of $5000 per annum. The words "per annum" in Section 246, limiting compensation for official services to $5000 per annum, evidently refer to the period during which the services were rendered, and not to the time of payment. The object was to limit the amount of compensation for a year's service. If this were not true, and the Constitution referred to the amount of compensation that could be paid within one year, the Convention and the people did a vain thing in adopting Section 246, for there would be no limitation upon the amount that could be paid an official for a year's service, provided the payments were spread over a sufficient length of time.

It is clear that the amounts authorized by this act to be paid the judges after their retirement is intended as additional compensation for the official services rendered by them. In order to receive these amounts they

are required to do nothing more than perform their official duties while in office.

The name by which the additional allowance may be called cannot affect what it really is. In Sanders v. Talbott, 255 Ky. 50, 72 S. W. (2d) 758, Sanders was Chief Clerk of the House of Representatives. The Constitution provided that the House should elect, appoint or pay only specified officers. It then sat in the old building, where these officers were sufficient. When the New Capitol Building was occupied, more officers became necessary. This court held that extra help could not be paid (Shanks, Auditor, v. Julian, 213 Ky. 291, 280 S. W. 1081). To meet the situation, the employees that were allowed by the Constitution were paid larger salaries than they would otherwise have received and they divided with the unauthorized employees. The Chief Clerk participated in this arrangement. He presented to the auditor a bill for his services that ran the total above the $5,000 limit. In the bill was a bonus of $300 voted him by the House, which he claimed should not be counted in determining whether the compensation exceeded the $5,000 limit. It will be noted that he paid out part of his allowance to other employees of the House, and that the $300 was granted as a bonus, but this court said [255 Ky. 50, 72 S. W. (2d) 761]:

"Mr. Sanders alleges the $300 bonus that was voted him was not received as salary, and hence should not be counted, but Section 3 of our Constitution provides that no grant of emoluments shall be made to any man or set of men except in consideration of public services. Therefore, this bonus could only be paid to him for his public services, and it must be included in the computation."

In Opinion of Justices, 175 Mass. 599, 57 N. E. 675, 676, 49 L. R. A. 564, relied on by appellees, an opinion was asked as to whether an appropriation to the widow of a person, who died while holding office, of the amount of the salary the officer would have drawn if he had lived out his term, was valid. The justices, including Justice Holmes, in advising that such an appropriation could be made, said:

"If such a provision should be enacted with regard to the widow, heirs, or legal representatives of a living officer, it naturally would be regarded as pledg-

ing the faith of the state to the officer himself, and thus as constituting part of the consideration for his future service.''

If a provision for the widow or heirs of one in office, to be effective on his death, would be considered part of the consideration for his future services, a fortiori a provision for the officer himself on retirement from office must be treated as a part of the compensation for his services while in office.

In State of Nebraska ex rel. Haberlan v. Love, 89 Neb. 149, 131 N. W. 196, 199, 34 L. R. A., N. S., 607, Ann. Cas. 1912C, 542, relied on in brief of amicus curiæ, the court, in upholding a fireman's pension, said:

"In applying these limitations to the instant case, it may be conceded that the pension forms an inducement to the individual to enter and remain in the service of the fire department, and that the pension in a sense is part of the compensation paid for those services. 2 Goodnow, Comparative Administrative Law, p. 74; Gray, Limitations of Taxing Power & Public Indebtedness, Section 336. In this aspect of the case, if no part of the service was rendered subsequent to the enactment of the law, the compensation would be a gratuity forbidden by the fundamental law of the state. Mead v. Acton, 139 Mass. 341, 1 N. E. 413.''

While no case precisely like the one under consideration has heretofore been before this court, yet, the court has been outspoken in its enforcement of the $5,000 limitation.

In Robinson v. Elliott County Fiscal Court, 236 Ky. 63, 32 S. W. (2d) 554, 555, it was said:

"There can be no question but that it is competent for the Legislature to provide for the separate allowance of salaries to public officers for different specified services; there being nothing in the Constitution requiring that the allowance should be made in one lump sum, the only limitation being that the aggregate of the allowance shall not exceed the Constitutional limit of $5,000, and that all of it should be fixed before induction into office.''

In Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133, 135, which involved the right of the Legislature to

add to the salaries of Circuit Judges, then in office, further compensation for their services as members of the Judicial Council, this court affirmed the decision of the learned Special Judge, who heard the case below, and quoted with approval from his opinion. In that opinion it was said:

"Since it provided that the membership shall be composed of judges, no sufficient reason appears why they should not be paid for their services in this extraofficial character (so far as their judicial capacity is concerned), so long as the provisions of Section 246, limiting to $5,000 the compensation of public officers other than the Governor, are not violated."

And again:

"Moreover, the act shows on its face that the General Assembly, in withholding compensation from judges of the Court of Appeals and from those Circuit Judges whose salaries are supplemented by their local communities was careful to keep within the Constitution by observing strictly the provisions of Section 246."

After quoting with approval the aforesaid opinion, this court further said:

"It is nothing new, therefore, for the General Assembly to provide that the Judicial Council shall be composed of the members mentioned in the act, but when we come to the question of compensation a different matter is presented. Section 246 of the Constitution contains the provision that no public officer other than the Governor shall receive more than $5,000 per annum as compensation for official services. It is not allowable to pay exceeding $5,000 annually to the same person for public services, whether such services are rendered in one position or more than one. If it were allowable to pay compensation up to the Constitutional limit for each public position held, the provision of the Constitution would mean nothing. Therefore, in allowing compensation for public services, the aggregate of the amount allowed for services to the same person holding different public offices must be limited to the sum prescribed in Section 246 of the Constitution."

If it be contended that the sums to be paid the judges on retirement are not paid as part compensation for the services theretofore rendered, Section 3 of the Constitution is encountered. That section, as heretofore shown, forbids the granting of public emoluments except in consideration of public services. If these retirement payments are not part of the compensation for the services rendered while on the bench, there are no public services to justify the payments. The act under consideration makes no requirement of any public service except the services theretofore rendered as appellate judge, in order to entitle the retired official to the allowance. The Legislature is not only not authorized to pay in excess of the $5,000 per annum for the services of the judges during their terms of office, but it is expressly forbidden to pay in excess of that amount for those services. Manifestly, these services for which the Legislature is forbidden to pay any more than has been paid, cannot be taken as public services for which additional public emoluments may be granted.

A distinction is suggested between the services rendered by a judge and for which he has been paid and long service upon the bench, and it is claimed that these extra amounts are justified as an inducement to long tenure of office. However, no such distinction is to be found in Section 246. That section makes no difference in the limit of compensation that may be paid for the first year's services, and for those of subsequent years. The same limitation applies to the 16th year and subsequent years as to all those that have gone before. The pay cannot exceed $5,000 per annum. That means that if an official serves 10 years he cannot receive more than $50,000 and if he serves 16 years not more than $80,000. There is no sliding scale. The Constitution makes no provision for an increase in compensation to encourage long service. We cannot write into the Constitution something that is not found therein.

It is pointed out that when a lawyer becomes a regular member of this court, he must give up his practice, and, if he serves for a long time, he is at a great disadvantage in resuming the practice. When a judge accepts a place upon the bench it is implicit that he must give up his practice, and that he cannot resume his practice while on the bench. The Constitutional Convention and the people must have known these things when Sec-

tion 246 was adopted. The salary of $5,000 must have been intended to compensate for all such losses. Certainly, it was never intended that an official should be paid $5,000 per annum for his official services and in addition be compensated for the loss of what he would have made if he had not accepted the office.

It is argued, in effect, that the work of judges of this court has increased greatly and become much more onerous since the adoption of our Constitution, and for that reason, their compensation in some form or other, should be greater. That may be a sound argument for an amendment to the Constitution permitting this, but the Constitution has not been amended. In fact, the people recently refused to so amend it. Until it is amended, it represents the will of the people and is the supreme law of the state and cannot be disregarded, no matter what change has come about in the amount of services rendered.

Counsel for appellees, and attorneys filing briefs amicus curiæ, discuss at considerable length the right of the Legislature to grant pensions in certain cases, and cite Bosworth v. Harp, 154 Ky. 559, 157 S. W. 1084, 45 L. R. A., N. S., 692, Ann. Cas. 1915C, 277; Board of Trustees v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606; De Wolf v. Bowley, 355 Ill. 530, 189 N. E. 893; State ex rel. Dudgeon v. Levitan, 181 Wis. 326, 193 N. W. 499; Opinion of Justices, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564; In re Advisory Opinion to the Governor, 98 Fla. 843, 124 So. 728; People, etc., v. Policemen's Annuity Fund, 326 Ill. 579, 158 N. E. 220, 54 A. L. R. 940; Fellows, Attorney General, v. Connolly, 193 Mich. 499, 160 N. W. 581; Manning v. Spry, 121 Iowa 191, 96 N. W. 873; and perhaps other cases, as sustaining the right to grant pensions in consideration of public services. But none of those cases presented the question we have here. In none of the cases outside of Kentucky was there any constitutional limitation of the compensation that might have been paid public officers, such as we have here.

In Bosworth v. Harp, the court upheld the grant of pensions to Confederate soldiers upon the ground that they had performed a public service. But those soldiers were not officers of this state, nor had they received any compensation whatever from the state.

In Board of Trustees v. Schupp, the pension was

to policemen who had been in the service of a city, rendering public services. The pension was small and did not involve a consideration of Section 246.

We do not consider any of the cases relied upon to be in conflict with this opinion.

It no doubt is true that a judge of this court might render some outstanding act of public service in a matter having no connection with his office or his official duties that might justify the Legislature in making some grant to him in recognition of that act, even as they might to a private citizen. But when he has been paid the full limit for his official services, the outstanding act for which he is rewarded must be "outside of official duties and with which they have no affinity or connection." Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 699, 32 Ky. Law Rep. 897. Such is not the case here.

If the act in question is sustained, it would open the way to a complete disregard of Section 246 of the Constitution. If it is once established that that section may be evaded by fixing a salary within the prescribed limit during the term of office, with a pension to follow on for life or for a definite term of years, it will effectually wipe out the restraint that was intended to be placed on legislative action by the sections referred to. If the Legislature may grant a pension following 10 years or 16 years service, for which $5,000 per annum has been paid, it may grant a pension following four years of similar service, and this will apply to all officials, and not merely to judges of this court.

It is clear to us that the act in question violated the constitutional provisions herein before set out, and is for that reason invalid. That being true, it becomes unnecessary to consider whether it violates any of the other sections of the Constitution relied on by the Attorney General.

The judgment below is reversed for proceedings in accordance with this opinion.

Considered by the Whole Court consisting of the following Special Judges, viz.: Chief Justice Joseph P. Goodenough and Judges C. C. Grassham, Wilbur K. Miller, J. Donald Dinning, W. L. Wallace, Frank C. Malin, and L. A. Faurest.

Chief Justice Goodeonugh and Judges Miller and Malin concur.

Judges Grassham, Dinning and Wallace dissent.

Miller and Malin, Special Judges (concurring).

We fully concur in the decision of the majority of the court, as so splendidly expressed in Judge Faurest's opinion, but, in amplification of the reasons which moved us to acquiesce in the reversal, we desire to file our separate concurring opinion.

As stated in the opinion of the court prepared by Judge Faurest, there is before this court for consideration the constitutionality of Chapter 131, 1940 Acts of the General Assembly, Sections 951a-1 to 951a-5, Kentucky Statutes.

The act is assailed by the Attorney General, representing the Commissioner of Finance, because, as he asserts, it violates several sections of the Constitution. Only three of the sections need be mentioned here, and they are: Section 3, which forbids the General Assembly to grant exclusive separate public emoluments or privileges to any man or set of men except in consideration of public services; Section 235, which says that the salaries of public officers shall not be changed during the terms for which they were elected; and Section 246, which limits the salaries for official services of all public officers, except the Governor, to five thousand dollars a year.

It is contended that the public services performed by the judges of the Court of Appeals are official services; that section 246 limits the salaries of judges to five thousand dollars a year for their official services; and, as the judges receive the maximum salary, additional compensation on retirement would amount to more than the constitutional limit for official services, which the Legislature is powerless to grant.

Furthermore, it is urged that as the annuity cannot be paid for official services it is not supported by public services, as required by Section 3 of the Constitution, because the judges do not render public services aside and apart from their official services for which the Legislature may grant public emoluments under that section.

It is also insisted that an officer who accepts an office does so with the understanding and implied agreement that he shall be paid for his official services the salary then fixed by the Legislature; that he shall not receive other or further pay for his official services in addition to the salary provided by law when he accepts the office; and that, as the judges have not rendered public services, within the meaning of Section 3, aside and apart from their official services, the act is invalid.

It is insisted that, as the annuity cannot be justified on the basis of public services performed by the judges aside and apart from their official services, then it is purely a gratuity which the Legislature is powerless to grant.

The appellees, through their counsel of record, and counsel as amicus curiae, contend that the act is constitutional; that it is not prohibited by the negative mandate of Section 3 of the Constitution; and that it does not violate any other section of the Constitution urged against it by appellant.

They say, in substance, that it is in the public interest, and for the promotion of the public welfare, to induce men of capacity, training and character, to seek the office of appellate judge, and to induce men of like quality and attainments to remain on the bench, so that the people may have the benefit of their public services, and gather the ripened fruits of the years of their experience, and of their ability. They insist that it is in the public interest, and that it promotes the public welfare, to make a career of public service on the appellate bench more attractive, and to induce those who hold, or who may obtain, the office to dedicate the productive years of their lives to public services on the bench, and to encourage their retirement when they have become incapacitated because of age or ill-health.

It is then insisted that it is within the power of the Legislature to declare it to be the public policy of this state "to offer, not as compensation, but as a gratuity to be paid in recognition of public services," the annuity provided for by the act, as a means of promoting the public good and public welfare in the manner referred to.

In the earlier briefs on behalf of appellees, in support of their insistence that the act is constitutional, it

was contended that the judges render public services within the meaning of Section 3 of the Constitution, aside and apart from their official services. In later briefs the position is clearly taken that the annuity provided for by the act is a gratuity given in recognition of public services and to induce men of good attainments to seek and to remain in office, and to retire when incapacitated.

At the very outset we desire to say that, in considering and disposing of the constitutional questions raised, we have given due consideration to the fundamental rules of construction and application of the constitutional provisions involved. We have recognized that the Constitution is a limitation of powers, and that the General Assembly has supreme legislative power save and except as withheld or limited by the Constitution; and that the court should proceed with the greatest possible caution, and should resolve every reasonable doubt in favor of the validity of the act, and give the act constitutional life, if, in the judgment of the court, there is any reasonable doubt as to its constitutionality. It is also recognized that legislative enactments are the declared public policy of the state, save and except when they are in violation of the withheld or limited powers. We have recognized the supreme power of the Legislature within its sphere, and that we should be very cautious not to encroach upon its power, and that the propriety, wisdom, and expediency of legislation are exclusively matters for legislative consideration, and the court should not declare an act invalid because, in their judgment, it may be unnecessary, or not in the interest of the state. It is in recognition of these fundamental principles that we have considered this case.

Section 3 of the Constitution is a part of the Bill of Rights, and, in order to guard against the transgressions of the high delegated powers, the Constitution (Section 26) provides that everything in the Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate. There are no implied exceptions to the Bill of Rights. Commonwealth v. Jones, 73 Ky. 725, 10 Bush. 725. That section of the Constitution has been carried over from our first Constitution, and it has been a part of every Constitution of the State. It became a part of our First Constitution when

the founders of our government were fresh from the battles fought for the equality of rights and privileges under government. It was a leveling off process, enacted to place all men on the same basis in their political rights and privileges, and benefits in government. It was adopted to correct and remedy the evils which had made governments tyrannical and unjust. It was to forbid the government, as the crown was at liberty to do, to bestow upon its citizens or subjects individual privileges, honors and distinctions of rank, birth or station, or political rights, privileges or emoluments. Williams v. Cammack, 27 Mass. 209, 5 Cush. 209, 61 Am. Dec. 508.

"Public services," as used in Section 3, and "official services," as used in Section 246, of the Constitution, are not identical or synonymous terms. Official services may, and most usually do, include public services; but public services do not always mean official services. Official services are the services rendered by an officer in the performance of his duties. They most usually, if not always, are public services which the officer is required to perform. Public services may or may not be official services. They may be performed by an officer outside the scope of his official capacity, or by a private citizen. Under Section 3, therefore, one may be awarded a public emolument for public services, whether the one performing the public service is an officer or a private citizen.

An emolument, according to the usual definition, and as adopted by the Court of Appeals, is a "profit from office, employment, or labor; compensation; perquisites, fees or salary," and payment therefor made out of public funds is a public emolument. State Board of Charities and Corrections v. Hays, 190 Ky. 147, 227 S. W. 282, 287; Words & Phrases, Vol. 14, Permanent Edition, pp. 329, et seq.

In defining "separate public emoluments" and "public services," as used in Section 3 of the Constitution, the Court of Appeals, in Ferguson v. Landrum, 64 Ky. 548, has said that the emolument "therein named is not for contemplated service to be rendered, but is allowed when the person shall, by heroic deeds, inventive genius, or great mental endowments, and a life of public virtue, become, in the judgment of the Legislature, a public benefactor." This definition of public emoluments, and the character of public services to be ren-

dered for which an exclusive separate public emolument may be allowed, was approved in the case of Bosworth v. Harp, 154 Ky. 559, 157 S. W. 1084, 45 L. R. A., N. S., 692, Ann. Cas. 1915C, 277, the Confederate pension case. Approval also was given in the case of Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673.

Under Section 3, the Legislature may award an emolument, separate and exclusive,—but it must be awarded in consideration of public services rendered. Consideration, as used, is not used in a contractual sense, but it means because, or on account, of public services rendered. It contemplates that some public service has been performed as a basis for granting the emolument. In Caudill v. Pinsion, 233 Ky. 12, 24 S. W. (2d) 938, 941, in referring to Section 3, the court said:

> "It only means that, before public emolument shall be bestowed, the bestowee shall have performed public services for which the bestowed emoluments formed the consideration."

At the very outset, and as a part of the Bill of Rights, the Constitutional Convention declared its unqualified stand for equality in government, in its burdens and in its rewards. It declared for the protection of the citizen in his individual rights, and then, by Section 3, it declared against the indiscriminate disposition of public benefits and public privileges. The Convention then created or provided for the creation of public offices, and with the Legislature and the appropriate political subdivisions of the state there remained the power to fix the compensation of the officers for their official services within the constitutional limitations. In Section 3, the Convention dealt with emoluments for public services other than official services, compensation for such services having been provided for by other sections of the Constitution, or the power to fix the compensation having been left by it in the Legislature or in the appropriate political subdivision.

The emoluments for public services authorized under Section 3 of the Constitution, therefore, are limited to public services for which no compensation has been provided or has been paid. This section and those sections of the Constitution which provide for the compensation of public officers for their official services, and the salary limitation section, under conclusive rules of

construction, should be harmonized, and this can be done only by applying Section 3 to public services for which compensation is not provided by the Constitution, or has not been provided by legislative enactments.

In the earlier briefs filed on behalf of the appellees, it was insisted that at the time the present Constitution was adopted the work of the Court of Appeals was not so great. The court began and ended its work with deciding cases and writing opinions. Since the adoption of the Constitution many duties are performed by the judges which were not earlier required of them or performed by them, such as hearing motions for temporary injunctions, which have greatly multiplied; acting as trustees of the State Library; considering and passing on petitions for re-hearing, not only concerning opinions written by the judges but opinions of the four commissioners who have been added to the court; admissions to the bar, and the promulgation of rules concerning admissions to the bar; duties imposed by the Integrated Bar Act, placing the bar of the state under the supervision of the court; responsibility for administration of the Judicial Council; printing of official Kentucky Reports; work of administration of the court itself having increased; attending and speaking at bar association meetings, school commencements, churches, and other public gatherings; ''keeping himself abreast of the law, particularly in these changing times,'' requiring much research without the assistance of law clerks.

It is true that many new and arduous duties are now imposed upon the judges of the Court of Appeals which were not a part of their official duties when the Constitution was adopted, and that the business of the court has multiplied many times. However, all of these duties and responsibilities, and the added work, are nothing more than a part of the official duties imposed on the judges by statute and included in ''official services'' as used in Section 246 of the Constitution, and other sections of the Constitution pertaining to the compensation of public officers for official services. They are explicit duties, or mere affinities of their office, for which they cannot receive additional compensation. Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897. Except, of course, the public appearances and public speeches which the judges make, mentioned in brief, are public services not required of them, but they are

only such services as are common to all citizens of the state of like attainments, multiplied, of course, because of the honorable office which they hold.

The Constitution not only prohibits the granting of exclusive separate public emoluments except for public services rendered, other than official services, for which compensation has been paid as provided for by law, but it limits the salary which a public officer may receive, for official services (Section 246), and it also provides that the salary of a public officer shall not be changed during the term for which he was elected (Section 235).

The judges of the Court of Appeals are paid the maximum salary for their official services. The Legislature cannot, therefore, further compensate them for such services, as Judge Faurest has so excellently demonstrated in the opinion of the court. If the services which the judges of the Court of Appeals have rendered are compensable under Section 3 of the Constitution, they must be other than official services, for which they have been compensated by receiving the maximum salary fixed by the Constitution.

It is a well known principle, and frequently recognized by this and other courts, that an officer can receive for his services only the amount of compensation fixed by law when he is elected and assumes the office, and that he cannot be paid anything in addition to his regular salary for services which he performs in his line of duty. Stone, Auditor, v. Pryor, 103 Ky. 645, 45 S. W. 1053, 1136, 20 Ky. Law Rep. 312; Marking v. Needy, 71 Ky. 22, 8 Bush 22; Warrick v. McCormick, 150 Ky. 800, 150 S. W. 1027; Collier, etc., v. Green, 205 Ky. 361, 265 S. W. 812; Harris v. Beaven, 11 Bush 254, 258; McCracken County v. Reed, 125 Ky. 420, 101 S. W. 348, 31 Ky. Law Rep. 31; Harlan County, etc., v. Brock, 263 Ky. 530, 92 S. W. (2d) 757; Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897; McQuillin, Municipal Corps., 2d Ed., p. 251, Section 544; Jerome v. Burns, 202 Minn. 485, 279 N. W. 237; State ex rel. Heaven v. Ziegenhein, 144 Mo. 283, 45 S. W. 1099, 66 Am. St. Rep. 420.

In the Reed case the court considered the validity of an act of the Legislature which authorized the fiscal court of the county containing certain class cities, and the cities, to supplement the salary of the circuit judge of the district in which the county was situated, and the

case involved Section 235 of the Constitution. The court said [125 Ky. 420, 101 S. W. 349, 31 Ky. Law Rep. 31]:

> "The purpose of the constitutional provision was to secure to the public officers a certain fixed compensation, so that they would be independent of the Legislature. It was also designed to prevent official power and position from being used by the officer to increase the emoluments of the offices after he secured the office."

The court held in the Reed case that, as the Legislature could not increase the salary of the officer after his election it could not authorize the fiscal court or the municipal authorities to increase it. The court, in the Brock case, after quoting from the Reed opinion, said [263 Ky. 530, 92 S. W. (2d) 759]:

> "But the point is made that the above rule is not applicable to this case for the reason that there was no change during appellee's term of office, but the change was made after the expiration of his term. It seems to us that this phase of Section 235 of the Constitution is entirely too narrow. The purpose of the provision was to require the salaries of public officers to be fixed before their terms began. To permit the change after the officer's term expired would defeat the purpose of the provision. Indeed, the allowance of an additional compensation to an officer after his term expires is a mere gratuity."

The court said in the Pryor case [103 Ky. 645, 45 S. W. 1137, 20 Ky. Law Rep. 312]:

> "We further find from the debates of the convention, that the framers of the constitution regarded that, when a citizen was elected to an office to which there was a salary attached, fixed by law, he was thereby regarded as having entered into a quasi contract with the people to serve for the compensation he expected to receive, and by this means not only secure the office and protect the people, but to secure the integrity of official life."

McQuillin on Municipal Corporation, and the Jerome case [202 Minn. 485, 279 N. W. 240], state the principle to be that:

> "Where an officer performs duties imposed by law he is entitled to the compensation therefor fixed by

law and no other. He is not entitled to extra compensation for services performed in the line of his official duty. The fact that the salary or compensation is inadequate remuneration for the services exacted and actually performed does not change the rule. And the principle is the same although his duties are greatly increased. Courts everywhere recognize the necessity of protecting the public funds, and hence they will usually enforce the rule against permitting extra compensation, either directly or indirectly, with appropriate strictness."

The judges cannot be further compensated for their official services, and futility in the effort to sustain the validity of the act on the theory that the annuity is granted for services rendered by the judges aside and apart from their official services is apparent.

Counsel for appellees then urge that the act is valid, because it is within the power of the Legislature to declare it to be the public policy of the state, in recognition of public services, to pay the judges who qualify under the act the annuity as a means of promoting the public good, and the public welfare, by inducing men of capacity, training and character to seek the office of appellate judge, and to induce men of like quality and attainments to remain on the bench, so that the people may have the benefit of their public services and of their years of experience and ability, and to make a career of public service on the bench more attractive, and to induce those who hold or obtain the office to dedicate the productive years of their lives to public service on the bench, and to encourage their retirement when they have become incapacitated.

There can be no doubt but that it is in the public interest, and for the promotion of the public welfare, to induce men of character, and of training, and high attainments in the legal profession, to seek and retain the office of appellate judge, and also to encourage judges to retire when they have become incapacitated by the infirmity of age or ill-health. But the Legislature does not have the power under the limitations imposed by the Constitution to declare to be a public policy that which is forbidden by the Constitution. The Constitution itself is the fundamental public policy of the state, and if an emolument is granted based upon a declaration of public policy which is in violation of the public policy as

declared by the Constitution, then, of course, the legislative declaration of public policy is without constitutional support, and, therefore, cannot be considered the public policy of the state.

It might be mentioned here that on two occasions within the last ten years the people of this state have been called upon to change the public policy of the state as declared by the Constitution in the matter of limitation of salaries of public officers. The Legislature has submitted to the people for their approval at least two constitutional amendments. The first one was to do away entirely with Section 246 of the Constitution, and the second one was to except the judges of the Court of Appeals from its provisions. The people by their vote rejected both of the amendments, and thus reaffirmed the constitutional declaration of public policy. The public policy of the state in that respect, therefore, is not only imbedded in the Constitution itself, but has been unmistakably approved by the vote of the people of the state on two occasions.

Two cases in particular are urged on the court as sustaining the validity of the act. These csaes are extensively discussed and quoted from in appellee's briefs. They are the cases of DeWolf v. Bowley, 355 Ill. 530, 189 N. E. 893, and State ex rel. Dudgeon v. Levitan, State Treasurer, 181 Wis. 326, 193 N. W. 499, a Wisconsin case.

It is urged that the provisions of the Constitution of the State of Illinois are as strong and explicit as the provisions of our Constitution applicable to the act under consideration, and, for that reason, the sections of the Illinois Constitution mentioned in briefs are referred to at length.

The DeWolf case involved the validity of an act of the Illinois Legislature providing for pensions for judges of various courts, including municipal courts, who had served the required number of years and become sixty-five years of age, and who should retire by resignation or otherwise. The opinion points out that Section 19 of Article 4 of the Illinois Constitution, Smith-Hurd Stats., forbids the General Assembly granting extra compensation, fee or allowance, to any public officer, etc., after service has been rendered or the contracts made, and that Section 11 of Article 9 of that

Constitution provides, in part, that "the fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased, or diminished, during such term." These sections of the Illinois Constitution are like Section 235 of our Constitution, which forbids the Legislature to supplement an officer's salary after his term has expired, as held in McCracken v. Reed, or to change the salary during the term for which he was elected.

Section 20, Article 4, of the Illinois Constitution declares that the state shall not pay, assume, or become responsible for, the debts or liabilities of, or in any manner give, loan or extend its credit to, or in aid of, any public or other corporation, association or individual. This section is like Section 177 of our Constitution.

Section 10 of Article 9 of the Illinois Constitution prohibits the levy or imposition of taxes by the General Assembly upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but requires that all taxable property within the limits of a municipal corporation shall be taxed for that purpose in a uniform manner with respect to persons and property. This section of the Illinois Constitution is similar to Sections 181 and 181a of our Constitution, which forbid the General Assembly to impose taxes for the purposes of any municipality or other political subdivision, but give the Legislature, by general laws, the power to confer on the political subdivisions the right to assess and collect taxes.

It is urged that there is no language in our Constitution as strong or explicit as the language in the Illinois Constitution which forbids the General Assembly "granting or authorizing extra compensation, fee or allowance to any public officer, agent or servant, * * * after service has been rendered or contract made," and that "the court upheld the constitutionality of the Illinois act applying to judges then in office based on services previously rendered." The Illinois court held the act constitutional because it considered that public benefits would accrue if officers were encouraged to remain in service and to retire when incapacitated; and it held that such benefits are not to be considered as donations or gratuities, but as inducements to continue service. The Illinois court said in its opinion [355 Ill. 530, 189 N. E. 895], that the judges' pension under considera-

tion was not "extra compensation to public officers for services already performed"; amici curiae seem to have been in error, therefore, in stating in their brief that the Illinois pension was upheld as being "based on services previously rendered."

In considering the similarity of our Constitution to the Illinois Constitution, from its provisions mentioned in the DeWolf case, and discussed in brief, it appears that there is no section of the Illinois Constitution dealing with emoluments for public services as strong or explicit as Section 3 of our Constitution. Furthermore, the opinion in the DeWolf case recognized the same limitations imposed by the Illinois Constitution on its legislature as imposed on our General Assembly by similar provisions of our Constitution and the court, in that case, impliedly, if not expressly, held that the act was unconstitutional if the pensions were allowed as extra compensation to officers for services already performed. In that case the pensions were not based upon services at all, but in recognition of public benefits to accrue from continued service and from retirement upon disability.

Inducement to enter public service, making a public career more attractive, continued public service, and retirement upon disability, may be very desirable, and may be, and perhaps are, for the public good and the public welfare, but, singly or collectively, they do not constitute public service for which an emolument may be granted under Section 3. Continued public services, only, of the enumerated ways from which public benefits may accrue, contain any element of public services, and tenure in office is compensated for by the salary allowed by law, and the state is entitled to the fruits of the utmost of the officers' attainments and integrity while in office. The other ways from which public benefits accrue have nothing to do with the rendition of public services within the meaning and purpose of Section 3. Performing public services, for which emoluments may be granted, in contemplation of Section 3, means that one, in the use of his capacities, whether mental or physical, has accomplished something, or performed some task, or produced something, which is for the public good—not that one of capacity and training seeks and retains an office which he desires, or retires at a given age from an office which he possesses. The enumerated

"services" do not, in any sense, measure up to the definition of public services in Ferguson v. Landram, Bosworth v. Harp, and Barker v. Crum. Furthermore, the public services for which emoluments may be granted must be public services previously rendered, and not merely contemplated services to be rendered (see Barker, Harp and Ferguson cases), and such services must be fairly describable as actual, not constructive or imaginary. Opinion of the Justices, 78 N. H. 617, 100 A. 49.

If, therefore, inducement to accept public service, continued service, and retirement upon becoming disabled, can be considered public services under Section 3, such services were in contemplation when the act was passed, and they are, and will continue to be, in contemplation.

It has been pointed out that counsel insist that it is in the public interest for the legislature, in the manner provided in the act, to make a career of public services on the appellate bench more attractive; to induce incumbents and those who may seek the office to dedicate the productive years of their lives to services on the bench; and to encourage their retirement when they have become incapacitated by age or illness, and to promote the public interest and public good. In that respect, the Legislature may "offer, not as compensation, but as a gratuity to be paid, 'in recognition of public services,'" the emoluments provided for in the act. Thus counsel urge that emoluments may be granted "in recognition of" public services, as distinguished from "compensation for" public services, or, in other words, that the proposed emolument is not as compensation "for" services rendered or to be rendered, but as a "gratuity" to be paid "in recognition of" public services. In fact, this suggested distinction is not real. To grant an emolument "in recognition of" and to compensate "for," or, in other words, to pay something as compensation for and to pay something in recognition of, both presuppose the rendition of public services as a basis of the grant. It does not appear, as has been pointed out, that the judges render such public services as would support an emolument in compensation for or recognition of such services.

It is urged in brief that, if Section 3 were construed to mean that emoluments could be granted in recogni-

tion of past services only, then no franchise could ever be granted to a public utility, as the service of a utility is to be rendered after the franchise privilege is granted. The error in this argument is in confusing "public emoluments" and "public privileges," as used in Section 3. Public emoluments are rewards for public services, paid out of public funds. A public privilege, or public right, meaning the same thing, is a privilege or right to participate in the formation, administration and conduct of government. The right to vote, or the right to practice law, or the right to serve the public as a public utility, is a public privilege. A utility is granted the privilege to render public services, and thus participate in the administration and conduct of government.

Our Constitution is as strong and explicit as the Illinois Constitution. It not only borbids the Legislature to grant or authorize extra compensation or fees to public officers after the services have been rendered, extend the credit of the Commonwealth to any individual, company, etc., or change the salary of any officer during his term of office, as does the Illinois Constitution. It provides the maximum salary which an officer may receive, and it also brings into effective reality the very fundamental principle of democratic government in equally distributing the benefits, as well as the burdens, of a democratic system, and it not only creates but maintains equality of right, and benefit in government, by forbidding the use of the taxing power to reward any man or set of men, except for services rendered for the public welfare, for which services compensation has not been paid or provided for by law.

The Dudgeon case upheld the constitutionality of a teachers' retirement fund act. In Wisconsin there was a provision in the Constitution similar to the one in the Illinois Constitution forbidding the Legislature to grant extra compensation to any public officer after the rendition of services, and it was held in that case that the annuity provided for was not based upon past services, nor was it compensation for past services, but it was to induce seasoned and experienced teachers to remain in service and give the public the benefit of their experience. The decision in that case, likewise, was based upon a premise inimical to our Constitution. Our attention is not called to any provision in the Wisconsin Constitution similar to or like Section 3 of our Constitution.

The Kentucky cases cited by appellee, some of which are relied upon in supporting their theory of the validity of the act, are: Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673; Bosworth v. Harp, 154 Ky. 559, 157 S. W. 1084, 45 L. R. A., N. S., 692, Ann. Cas. 1915C, 277; Board of Education of Calloway County v. Talbott, Auditor, 261 Ky. 66, 86 S. W. (2d) 1059; Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408; Norman, Auditor, v. Kentucky Board of Managers, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556; Board of Trustees v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606; Head v. Jacobs, 150 Ky. 290, 150 S. W. 349; Rohe v. City of Covington, 255 Ky. 164, 73 S. W. (2d) 19.

In the Barker case, the Court of Appeals held unconstitutional an act which authorized counties to send a certain number of students to the State University free of tuition, and at some length discussed the historic Muter pension controversy. The court said that from the narrative of that event public opinion prevailed more than a century ago that emoluments in consideration of public services, as used in the Bill of Rights, meant only compensation or salary of a public officer while performing the duties of his office, and the services having been rendered and paid for the power of the Legislature no longer existed to grant compensation, by way of pension or otherwise, or to add to that which had been granted. The court then observed that it did not subscribe to that narrow meaning attributed by the Legislature to Section 3. Neither do we subscribe to such narrow interpretation, but it is interesting to note that even then it was recognized that, under Section 3, the Legislature could not award additional compensation by way of pensions.

The Harp case is the Confederate pension case. There the beneficiaries of the pension were not officers of the State, and had not received any compensation from the state for their public service. It was held in that case that the Confederate pension act was for a public purpose, and that the beneficiaries of the act had rendered a public service in entering the army of their choice, and fighting for a principle—the right of each state to regulate its local affairs.

In the Calloway County case the constitutionality of an act which appropriated public money to school teachers in some of the counties in the state was ques-

tioned, and the court held the act unconstitutional. The court said in the opinion that the Legislature may make an appropriation in recognition of moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law he is required to do so or not, and cited the Ferguson and Harp cases as examples of public services, as the term is used in Section 3 of the Constitution. The court pointed out that such obligations mean that some direct benefit was received by the state, or some direct injury was suffered by the claimant, under circumstances where, in fairness, the state might be asked to respond, and there must be something more than a mere gratuity involved, and it is also pointed out in the opinion that taxes may be levied based on moral obligations unless forbidden by some constitutional provision. Of course, the obligation, whether moral or equitable, must be based upon public services rendered, and the court did not hold otherwise.

The Carman case involved the validity of an order of the fiscal court to make an appropriation to supplement the salary of the county agent, which was in cooperation with the University of Kentucky and the United States Department of Agriculture in carrying on agricultural extension work through the county agent. The validity of the order was questioned on the theory that the appropriation was not for a public purpose, and, also, that it exceeded the constitutional limit of indebtedness. At that time it was entirely within the discretion of the fiscal court of the county whether it would employ a county farm agent. Adair County Farm Bureau v. Fiscal Court, 263 Ky. 23, 91 S. W. (2d) 537. The court held that the appropriation was to promote the agricultural interest of the state, and, therefore, it was for a public purpose. It, also, was to contribute toward the salary of an officer whom the fiscal court, in its discretion, had the right to employ, and had the right to provide for the payment of his salary. The question did not arise in that case as to whether the Legislature could reward an officer in addition to the salary paid to him for his official services, as provided for in the act under consideration.

The Norman case, known as the World's Fair case, involved the validity of an appropriation for an exhibit of the resources of the state at the World's Columbian Exposition. In that case, Section 3 of the Constitution

was not involved. The question raised was whether the appropriation was for a public purpose under Section 171 of the Constitution, which provides that taxes shall be levied and collected for public purposes only. The court held that the appropriation was for a public purpose, and that the commissioners selected to expend the money were merely state agents to provide the exhibit for the benefit of the people of the state.

The Schupp, Jacobs and Rohe cases are policemen and firemen retirement fund cases, and deal particularly with the administration of the law. In one of the cases only is the constitutionality of an act involved, the Schupp case, and the court held the act constitutional upon the theory that policemen and firemen serve in the capacity of protecting the lives and property of the community, accompanied with hazard and danger, occasionally resulting in death or bodily injury while in the performance of their duties, and that the municipality may, in addition to their salaries paid to them while in office, provide for compensation for death which may occur in the performance of their duties, to be paid to their dependents, and provide compensation for injuries sustained while in the performance of their duties, and, in the nature of adjusted compensation, provide a measure of security upon retirement after long years of service. It can be seen, readily, that the so-called policemen and firemen pension acts are not pension acts at all in the real sense that they reward one for past services, which is the meaning of pensions, but they set up a system of compensation for death, to be paid to the officers' dependents, and compensation for disabling injuries, occasioned while acting in, or on account of, the performance of his duties, and a system of adjusted compensation to be paid at stated periods upon retirement at a given age, which is considered a part of the salary of the officer while in office. Courts usually sustain the validity of such acts on the theory that the payments for disability and death while in the performance of their duties are in the nature of compensation for such injuries and loss of life, and that the retirement pay is adjusted compensation presently earned, which, with contributions from the employees, is payable in the future. Retirement Board of Allegheny County v. McGovern, 316 Pa. 161, 174 A. 400. Under such a system the retirement fund is part of their fixed compesnation, the pay-

ment of which is conditioned upon the employee remaining in office a given number of years and retiring at a given age. We think the policemen and firemen retirement fund acts are in a class apart, and are distinguishable from the act under consideration.

The Rohe case is quoted in brief:

"A pension is a bounty springing from the appreciation and graciousness of the sovereign, and may be given or withheld at its pleasure. * * * It is for the Legislature to say what classes of persons shall receive pensions, and to fix the terms and conditions on which they will be granted." [255 Ky. 164, 73 S. W. (2d) 20.]

This case merely involved the administration of the act. The act provided for monthly payments to the widow and dependents of a policeman who should die as a result of an injury arising while in the line of his duty, or from any disease contracted by reason of the performance of his duties, or from any cause whatsoever as a result of his services as a policeman. The question arose as to whether the policeman died from a disease contracted by reason of his occupation. The board of trustees of the pension fund rejected the claim, because, as the board thought, the death was not caused by disease resulting from his services as policeman, and the widow sought to recover under the act, and to mandamus the board of trustees to pay to her out of the fund the sums provided for in the act to be paid upon the death of a policeman. The court held that, under the act, the decision of the board of trustees of the pension fund was final and that it could not review the facts. The court was not called upon to define a pension or to pass upon the constitutionality of the act.

There are some cases cited in support of the act from foreign jurisdictions, along the line of the DeWolf and Dudgeon cases, but they are from jurisdictions which do not have constitutional limitations like our Constitution. There are also a number of cases cited from foreign jurisdictions dealing with the question of whether the appropriation is for a public purpose, such as Opinion of the Justices, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564, wherein it is stated that the power to pay gratuities to individuals is denied to the Legislature by the Constitution, and that the courts do not delay to

enforce so plain a proposition. It is then held in that case that, when a public purpose can be helped or carried out by spending public money, the purpose of the Legislature is not curtailed or destroyed by the fact that the money is paid to private persons who had no previous claim of any kind to it. Such a grant may be made under our Constitution if the grant is for a public purpose (Section 171), but it must be for public service rendered if the money is to be paid to any man or set of men.

We do not think it is necessary to discuss the other authorities cited dealing with the question as to whether the purpose of the appropriation was a public purpose, as we have pointed out that the appropriation not only must be for a public purpose, but, also, it must be for public services rendered, within the meaning of that phrase as revealed by the Constitution.

Much has been said in brief about the policy adopted by other states in granting annuities upon retirement from office, but in none of those states where such a policy is in effect does the Constitution forbid the granting of public emoluments except for public services, or such constitutional provision by constitutional amendment has been made to except judges.

The article of Prof. Shartel, Professor of Law at the University of Michigan, quoted from and commented upon at length in brief, is not helpful in the solution of the question before us. It nowhere meets or discusses the question of constitutional limitation imposed by our Constitution, and it deals largely with pensions as a trend of the times, as they are dealt with in one of the briefs filed for appellees in this case, having a paragraph dealing with "The Modern Trend Toward Pensions." Trends do not constitute a basis for the court to hold an act constitutional. This act should not be held constitutional because it is in harmony with the "modern trend." Sometimes trends needs to be arrested. They are not always true indications of a healthy public body

We would be remiss if we did not record our conviction that the judges' salaries are wholly inadequate, and that the office usually is accompanied with great sacrifice. The appellate judges are required to leave their homes and friends, and business associates, and

their social companions of many years' standing, and to reside away from their friends and acquaintances of a lifetime. They most often must give up a remunerative law practice, and accept the office at great financial sacrifice, and after a long and honorable service on the bench, retire at a time in life when it is difficult for them to re-estblish themselves in practice. Fate seems to have so decreed. Their clients have passed away, or conditions have changed and they no longer have remunerative legal business with which to entrust them. They are required, most usually, to devote the. fruitful years of their lives to their office, and to contribute the utmost of their integrity and ability in the service of the state, with inadequate remuneration. But these things are in contemplation when the judges seek and accept the office, and they are mere affinities of the office, for which they cannot receive reward in addition to their fixed salary.

May we take the liberty to paraphrase the last paragraph of the opinion in the Calloway County case:

> "As worthy as we may believe to be the claims of the judges who would receive the benefit of the appropriation provided for by the act, and however willing we may be to invoke for them the benedictions of the good goddess, our obligation to the Constitution impels us to reverse the judgment."

Dinning, Special Judge (dissenting).

Because of the public importance of the question involved in this case, the minority deems it proper to state the reasons which impel us to dissent.

We believe that the benefits which the General Assembly by Chapter 131, Acts of 1940, granted to the judges of the Court of Appeals upon retirement from office under the conditions therein stated are not pay or compensation, but gratuities, given by a grateful people in recognition of public services; that the power to enact such legislation is inherent in the General Assembly unless prohibited by the Constitution of Kentucky; that the judges who qualify under the requirements of Sections 1 or 2 of the Act are properly classified as public benefactors entitled to the exclusive separate emoluments granted to the members of those classes; that they render "public services" within the meaning of Section

3 of the Constitution; that the receipt of a gratuity cannot increase "compensation for official services," and so cannot cause an official's compensation to exceed the limit of $5,000 fixed by Section 246; that no provision of the Constitution prohibited the enactment of Sections 1 or 2 of the Act; that the well-settled rules, long established for the guidance of a court considering the matter of the judicial branch of government nullifying the action of another coordinate branch, should be followed and not disregarded; and that the court should not be influenced by the personal views of its members as to the wisdom of the *policy* of granting these pensions, since the propriety, wisaom, and expediency of legisiation *is exclusively a legislative question.*

These points will now be discussed in more detail.

Section 3 of the Constitution prohibiting the granting of separate public emoluments or privileges to any man or set of men, is expressly limited in scope by the clause: "except in consideration of public services," and in our opinion, the majority is not justified in construing these words as if they had been: "except *as compensation for* public services." A more logical and more proper construction of the clause is: "except *in recognition of* public services." We have been unable to find any authority to support the majority view, but we have found judicial language supporting ours.

In the case of Board of Education of Calloway County et al. v. Talbott, Auditor, 261 Ky. 66, 86 S. W. (2d) 1059, 1064, the Court of Appeals of Kentucky held:

"It is true that we have construed Sections 3 and 171 of our Constitution 'to mean that an appropriation may be made by way of gratuity *in recognition of* public services.' " (Italics ours.)

Beyond the words actually used in Section 3, we have been shown no recorded evidence of the meaning which the members of the Constitutional Convention intended to convey thereby, although the history of the section and the Debates of the Conventions were reviewed and commented upon in the briefs filed in this case. Therefore, it seems to us that the language of the Kentucky court in the Talbott case should control.

The prohibition contained in Section 3 was not directed toward gratuities granted in recognition of pub-

lic services, as is clearly seen from the history of that section, and from an examination of the terms used in that and other sections of the Constitution.

The provisions of Section 3 of our present (Fourth) Constitution are substantially the same as in our First Constitution, adopted in 1792. It is well understood that historically Section 3, which was borrowed from the Constitution of Virginia at the time Kentucky became a state, was intended to put an end to certain abuses which were prevalent in England at the time when the Colonies declared their independence. It was then the practice of English Kings to confer pecuniary favors upon favorites, of both sexes, by placing them upon "the civil pension list," which enabled them to draw handsome allowances from the public treasury without rendering even "public" services.

Had the framers of the Constitution intended to restrict the meaning of the term "public services," it could as easily have used only the word "services" in Section 3, as in the eight other sections where the latter term is found in reference to compensation for officers. Sections 42, 74, 86, 96, 112, 133, 140, and 245. In fact, had the framers desired to express the limitation as the majority now construes the words used by them, they could and would have used language to correctly express that thought, such as: "except as compensation for services." The fact that in the entire Constitution the term "public services" is used only once (in Section 3) and the term "official services" also is used only once (in Section 246), is quite significant. We do not think it proper for the court, by judicial construction, to rewrite the sections by ignoring the distinction obviously made by those who prepared the Constitution.

The minority is convinced that there exists a form of "service" which is not embraced within the term "official services," and which those drafting the Constitution sought to identify by using the term "public services" in connection with Section 3, instead of the term "official services" found in Section 246. In Ferguson v. Landram, 1 Bush 548, 64 Ky. 548, 593, it is stated that the term "public services," as used in Section 3, can be applied to "great mental endowments" or "a life of public virtue," as distinguished from the rendition of "service."

The majority concede that public service, as well as official services, may be rendered by an official, but they say, in effect, that an official's public service is not to be included within the meaning of the term "public service" found in Section 3, if its rendition has any connection with the performance of official duties. The reason given is that the official's salary covers all such services. This could be important in the consideration of this case only if Section 3 prohibited the granting of an allowance unless made in *payment* for the public services. Section 3 could be so construed only by giving to the expression "in consideration of" the meaning "as payment for." Yet five members of this court have agreed, and have expressly so stated in the concurring opinion and in this dissenting opinion, that the words "in consideration of" mean "in recognition of," or "on account of," and were not used "in a contractual sense." The majority opinion does not express a contrary view for the remaining two members. Notwithstanding such agreement upon this most vital point in the case, the majority reaches a conclusion that necessarily gives the term a contractual application, although such was admittedly not intended by the framers of the Constitution.

If a quid pro quo is essential, then the pension is not a gratuity, but is a salary, giving the pensioner vested rights therein.

It is well settled that a pension is a gratuity and that the pensioner has no vested rights to the continuance thereof if the Legislature sees fit to repeal the act granting it.

In the case of Rohe v. City of Covington et al., 255 Ky. 164, 73 S. W. (2d) 19, 20, involving policemen's and firemen's pensions, the court said:

"Indeed the granting of a pension in the first instance does not stand on the plane of a contract right or right vested by statute. A pension is a bounty springing from the appreciation and graciousness of the sovereign, and may be given or withheld at its pleasure."

In Head v. Jacobs, 150 Ky. 290, 150 S. W. 349, 350, involving policemen's pensions, the court held that:

"A pensioner has no vested right to his pension.

The Legislature which created it can recall its bounty at its discretion.''

In the note in A. L. R. to People ex rel. Donovan v. Retirement Board, etc., 326 Ill. 579, 158 N. E. 220, 54 A. L. R. 940, the annotator says:

''The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation, but a gratuitous allowance, in the continuance of which the pensioner has no vested right; and that a pension is accordingly terminable at the will of the grantor.''

In Dickey v. Jackson, 181 Iowa 1155, 165 N. W. 387, 389, the court said: A pension ''is ordinarily a gratuity from the government or some of its subordinate agencies, in recognition, but not in payment, for past services.''

The power of the General Assembly to classify for the purpose of preferring the members of one class over those of another class, is no longer open to question, providing the classification is not arbitrary or unreasonable.

In Commonwealth v. Goldburg, 167 Ky. 96, 180 S. W. 68, 73, involving a construction of Section 3, the court said:

''But so far as the mere question of the authority for legislative classification is concerned, there is no room for dispute. It has been time and again settled by courts everywhere that it is competent for the Legislature to create classes and deal with these classes, both in respect to civil as well as criminal rights and liabilities, separately, the only limitation being that the classification must rest upon some reasonable difference existing between the class selected for treatment and other classes of persons or property. So that the mere fact that the Legislature may confer upon a certain class rights and privileges not enjoyed by other classes is in itself no objection to the statute, unless the classification is arbitrary or unreasonable. * * *

''Therefore reasonable legislation, having for its purpose the creation of classes and their separate treatment, should not be interfered with on the ground that it is unreasonable or arbitrary, unless

it plainly appears to be and is an effort to confer some undue privileges in excess of the lawful rights of the person or businesses affected, or to deny to the persons or businesses affected some privilege to which they are fairly entitled. So that the question whether the classification here made is reasonable depends on whether the class of property selected for separate classification and treatment is of such a character as that it may reasonably be set apart in a class by itself. We think it is.   *   *   *

"And the accomplishment of these objects, affecting as they do the public good, authorizes the Legislature to put the persons and businesses treated of in a class by themselves."

The General Assembly has the same powers of classification for pension purposes. In the case of Rohe v. City of Covington, supra, the court said:

"*   *   * It is for the Legislature to say what classes of persons shall receive pensions, and to fix the terms and conditions on which they will be granted."

The free sovereign people of the Commonwealth of Kentucky, through their duly accredited representatives, met in General Assembly, have spoken these words:

"It is hereby declared that sound public policy is that reasonable security and financial independence should be established for those serving on the highest court of this State,   *   *   *"

and have enacted a law and made an appropriation to put into effect such a public policy.

We are called upon to determine whether the will of the people, as expressed by the legislative branch of the government, and approved by the executive branch, *must* be denied approval by the judicial branch. If it *can* be approved, within the law, it must be approved. It can be approved unless this particular attempt of the Legislature to exercise its powers was forbidden by the Constitution of Kentucky, *in express terms or by necessary and proper implication.* Unlike the Federal Constitution, which is a grant of powers, the State Constitution is merely a limitation on powers otherwise absolute.

The power of the General Assembly, and the only

extent to which the Constitution limits that power, is thus stated in the case of Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606, 608, in which the policemen's pension law was upheld:

"Much of the confusion that might arise in considering cases of this kind will be removed by a few moments' reflection upon the power of the General Assembly of Kentucky. The people of Kentucky are a free, a sovereign people, and when the duly accredited representatives of that people meet in general assembly, that sovereignty inheres in that assembly. It does not look or have to look to Constitutions for grant of its authority, for it is the representative body of a sovereign people, recognizing no human authority above itself, and restricted only by those limitations which have been, for the common good, yielded to the federal government, and those which for our common safety have been embodied in our state Constitution.

"The theory that the right of local self-government inheres in the municipalities of this state is essentially unsound, and is based upon the now discarded doctrine that the Constitution of this state is a grant or delegation of power by the people of the state to the state government, and is not, as is now generally recognized, a limitation upon a power which, merely by virtue of its sovereignty, would otherwise be absolute. When this section of the Constitution provided for the classification of cities for their organization and a definition of their powers by general law, that was not a grant to the General Assembly of authority so to do, but was a limitation upon what, without those limitations, would be the absolute power of the General Assembly to do what it pleased. When we look at these questions from this position, and view our Constitution not as a grant of authority, but as a series of limitations upon what otherwise would be the absolute power of the General Assembly, the solution of this case presents no difficulty."

While no claim has been made in this case that the members of the highest court in the judicial branch of government are not as worthy of separate classification for pension purposes as firemen, or policemen, or school

teachers, or soldiers, yet we desire to briefly call attention to some of the many laudable motives which must have prompted the General Assembly to pass this act.

Had the General Assembly been actuated only by a desire to discharge a moral obligation toward the set of men who are devoting their lives and talents to the administration of justice from the highest court of the Commonwealth, at the cost of the economic security which their private practice at home would assure, and with all the other economic hazards which inevitably accompany the secluded life of an appellate judge, there is judicial language supporting appropriations for such purposes.

In the case of Board of Education of Calloway County et al. v. Talbott, Auditor, supra, dealing with school teachers, the court said:

"The Legislature may make an appropriation in recognition of moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law he is required to do so or not. 'Taxation to raise money to pay a claim based on a moral obligation, and not enforceable at law, is for a public purpose, and is proper unless forbidden by some constitutional provisions.' Cooley on Taxation, Vol. 1, 4th Ed., Section 194, page 412."

In the case of DeWolf v. Bowley, 355 Ill. 530, 189 N. E. 893, 894, the Supreme Court of Illinois had this to say on the subject:

"Pensions have generally been sustained on the ground that public benefit accrues in two ways: By encouraging such officers or employees to remain in the service, and by retiring from public service those who have become incapacitated from performing the duties as well as they might be performed by younger or more vigorous persons. I Dillon on Mun. Corp. (5th Ed.), Section 430. Cooley, in his treatise on taxation (1 Cooley on Taxation [3rd Ed.] 189), presents the view of courts generally of this country concerning pensions, that their primary object is not a private but public interest, to show appreciation for meritorious public service, which may reasonably be expected to have a powerful influence in inducing long and continued serv-

ice. He expresses the opinion that the power of the Legislature to pass such acts is undoubted."

Then follows a review of the judicial pension systems in force for many years in "all the major nations of the world," including the Federal Courts of the United States, and the state courts of eighteen states in this country. (Since 1934, when this case was decided, the number of states adopting judicial pension systems has increased to at least twenty-nine, exclusive of Kentucky.)

Another opinion containing language pertinent to this subject is in the case of State ex rel. Dudgeon v. Levitan, 181 Wis. 326, 193 N. W. 499, 500, where the Supreme Court of Wisconsin, in upholding teachers' pensions, used the following language:

"As we view it, the annuity based on past service is not intended to be, or operate as, compensation for past service. It was rather intended to be, and in fact is, an inducement to the seasoned and experienced teacher to remain in the service and give the public the benefit of his experience."

The issues presented in the Illinois case are almost identical with those in this case, the constitutional limitations are fully as restrictive as those of this Commonwealth, and its finding that a grant of judicial pensions is valid, notwithstanding a constitutional provision of Illinois prohibiting the granting of any "*extra compensation, fee, or allowance* to any public officer \* \* \* after service has been rendered" (since a pension is not "compensation," etc.) should be a valuable precedent for this court to follow. The efforts to distinguish the case are strained and unsound, but as we have ample domestic authorities to support our view we shall not devote the required space to an analysis of that case nor the decisions of the courts of any other states.

In the Schupp case, the Kentucky Court of Appeals quotes with approval the following from R. C. L.:

" 'The establishment of a pension system for municipal officers and employees, whereby, after serving a certain number of years or upon disablement from injuries received in the course of their duties, they are retired from active service and paid a cer-

tain proportion of their salaries for the remainder of their lives is not an unconstitutional disposition of public moneys for private use when applied to officers and employees who have entered or continued in the service after the system went into effect. * * * A judiciously administered pension fund is doubtless a patent agency in securing and retaining the services of the most faithful and efficient class of men connected with those arms of the municipal service in which every property owner and resident of the city is most vitally interested. Reasons in support of this proposition need not be stated in detail. They are such as readily suggest themselves to every reflecting mind.' 19 R. C. L. 726, 727.''

The many public benefits resulting from the adoption of a pension system for the judges of the highest court of a State are commented upon in an article entitled "Pensions for Judges" by Burke Shartel, Professor of Law of the University of Michigan, in 27 Michigan Law Review 134, to which is directed the attention of those interested in a more detailed discussion of the subject.

Although the grant is made directly to an individual, the primary object of a pension may be the general public, as was pointed out by the Justices of the Supreme Judicial Court of Massachusetts, including Justice Holmes, in an opinion entitled In re Opinion of the Justices, 175 Mass. 599, 57 N. E. 675, 49 L. R. A. 564, where it is said: "Such a gift may be intended primarily for an object which is no more private than a memorial hall." In that case the court, although recognizing the general rule that public funds may not be appropriated to private uses, holds that to a great extent it should be left to the conscience of the legislature to distinguish between private and public benefits, and that a pension to a widow of a person who died while holding office could be approved since "it fairly can be thought that the public good will be served" thereby.

We shall next consider the reasonableness of the classifications for benefits under the Judges Pension Act.

Section 1 of the Act creates a class consisting of (1) judges of the Court of Appeals, (2) who have served

ten years or more, (3) continuously, (4) who have reached the age of sixty-five, and (5) who retire from office.

Section 2 of the Act creates a class consisting of (1) judges of the Court of Appeals, (2) who have served sixteen years or more, (3) continuously, (4) who retire from office, (5) because of ill health or physical incapacity, (6) when such facts are certified by order of the court or a majority of its members.

Although the minimum age requirement is stated in Section 1 and not in Section 2, yet it does not follow that the standards for qualifying under Section 2 are not as high, nor that the same good reasons do not support both classifications, since the minimum term of continuous service is increased by sixty per cent., and ill health or physical incapacity is added to the other requirements. The classification of beneficiaries who receive rights and privileges not enjoyed by those who cannot qualify is no ground for invalidating the act, the classification not being arbitrary or unreasonable. Commonwealth v. Goldburg, supra.

Section 3 of the Act does not expressly or impliedly contain any requirement for a minimum age, nor for a minimum period of service, nor does it apply to retirement due to ill health or physical incapacity, nor is a certification of any facts by the court or its members required. The only qualification is retirement from the office of Judge of the Court of Appeals. Although the conclusion arrived at by the majority in this case renders it unnecessary to differentiate between the three sections of the act, yet the minority is constrained to state its belief that the standards for qualifying under Section 3 are not sufficiently high to constitute a valid classification and, therefore, our approval of the act does not extend to Section 3.

There is nothing new about Kentucky granting pensions in consideration of public services. The best known domestic pension case is Bosworth v. Harp, 154 Ky. 559, 157 S. W. 1084, 1085, 45 L. R. A., N. S., 692, Ann. Cas. 1915C, 277, decided in 1913, where the court held that the General Assembly may create a class of public benefactors to receive pensions. In approving pensions to Confederate soldiers, the court said:

"Necessarily the matter is one committed to the dis-

cretion of the General Assembly, and, when the Legislature has declared the use a public one, its judgment will be respected by the courts, unless the use is palpably without reasonable foundation.''

The court expressly found that Section 3 did not forbid such gratuities, even though the ''public services'' may have been rendered outside the State, when the soldier was a resident of another state, and even though Kentucky was not one of the Confederate States. Is such a strong precedent to be brushed aside by merely saying that Confederate soldiers were not ''public officers''? After being the law of the land for twenty-eight years is this court justified in rendering a decision which, in effect, at least, approves appellant's criticism that it is ''bad law''?

We have examined every pension case decided by the Court of Appeals of this Commonwealth to which our attention has been called, and such others as we could find by independent investigation, and we have seen none which supports the view of the majority or which is contrary to the views of the minority.

The Court of Appeals has reviewed many cases involving Acts of the General Assembly granting pensions to policemen and firemen: McDonald v. City of Louisville, 113 Ky. 425, 68 S. W. 413 (Act of 1893, as amended in 1900); Board of Trustees of Firemen's Pension Fund v. McCrory, 132 Ky. 89, 116 S. W. 326, 21 L. R. A., N. S., 583 (Act of 1902); Tyson v. Board of Trustees, Firemen's Pension Fund, 139 Ky. 256, 129 S. W. 820 (Act of 1902); Schmid v. Board of Trustees of the Firemen's Pension Fund, 146 Ky. 335, 142 S. W. 688 (Act of 1902); Head v. Jacobs, supra (Act of 1912, replacing an Act of 1904); Stone v. City of Lexington, 192 Ky. 60, 232 S. W. 50 (Act of 1894, as amended in 1900 and 1920); Board of Trustees of Policemen's Fund v. Schupp, supra (Act of 1912, as amended in 1926); Campbell et al. v. Board of Trustees of Firemen's Pension Fund of Louisville, 235 Ky. 383, 31 S. W. (2d) 620 (Act of 1912, as amended in 1928).

As recently as 1940, the Court of Appeals has continued its policy of approving the firemen's and policemen's pension acts. Miller v. Price et al., 282 Ky. 611, 139 S. W. (2d) 450, 453.

Another class receiving pensions in this state are

school teachers, and these have also been held to be public officers. Board of Education of Calloway County et al. v. Talbott, Auditor, supra. That case did not involve pensions, but merely the right of teachers to salary under an invalid statute. However, many of the statements of general principles of law, like the one previously quoted in this opinion, are applicable to this case.

The foregoing precedents of judicial approval of pensions to public officers should completely answer the contention that one who has received a salary for official services cannot accept a pension for public services having any affinity with his official services. There is no difference, so far as the law of the case under consideration is concerned, between the right of a judge to receive a pension in recognition of his public services growing out of the discharge of his official duties, and the right of a policeman, fireman or school teacher to receive a pension in recognition of public services growing out of the discharge of their official duties. According to the construction placed on Section 3 by the majority, the *exception* to the prohibition contained in Section 3 is meaningless as far as officials who receive the salary limit are concerned, since they are ineligible for the benefits which the Legislature may wish to grant them in recognition of their public services.

An attempt is made by the appellant to distinguish these cases upon the ground that the pension systems involved have some contributing features. This is completely answered in the case of Miller v. Price et al., supra, where the court held that "the fact that a pensioner has made compulsory contributions does not vest him with rights in the fund," and that the pension is nevertheless a gratuity or bounty.

The majority says that the precedent created by the court's approval of Confederate pensions (Bosworth v. Harp, supra) is not applicable here because it did not involve a public officer. This contention is answered by the court in the case of Schmitt, Auditor, v. Dooling, 145 Ky. 240, 140 S. W. 197, 198, 36 L. R. A., N. S., 881, Ann. Cas. 1913B, 1078, which holds that firemen and policemen are "public officers." The opinion also says, "* * * a pension system is provided for firemen and policemen alike." If being a public officer was no ob-

jection in the case of a policeman (Schupp case) why should it be in this case?

The majority also says that the Schupp case is distinguishable because the pension there was small. Obviously, the size of a pension should not be the test of the constitutionality of the act creating it. While the point has not been directly involved in any of the decisions, it is interesting to note that the annual appropriation for teachers' pensions is $500,000 (Chapter 192, Acts of 1940) while that for judges is only $25,000, and there would be very little probability of the benefits under this act ever requiring the entire appropriation, since if all seven judges were eligible for pensions and retired at the same time, the total amount required would be only $35,000. No one has contended in this case that the taxpayers' money will not be put to as good use under this act as under the acts pensioning policemen, firemen, school teachers, or soldiers.

It is suggested that the act is subject to criticism because all the members of the class selected for this pension, when eligible, will get the same amount each year as a pension, when it is highly improbable that each will render the same quality of public service. The same objection could have been raised against the school teachers, and the court could have refused to hold constitutional the policemen's pensions, the firemen's pensions, and the Confederate pensions, on the same grounds. Moreover, it is a sufficient answer that the court has previously held that it is for the Legislature to fix the terms of pensions as well as to say what classes shall receive them. Rohe v. City of Covington, supra. There have been numerous instances where the Legislature has allowed gratuities to those it considered had rendered public services which have not reached the court for a test as to validity. For instance, an appropriation of $50 a month so long as he might live was made to one Robinson, a guard at the penitentiary (Acts of 1926, Chapter 365); a pension of $50 a month so long as he might live was allowed to one Overton, injured while firing a cannon celebrating an anniversary recognized by prior resolution of the Legislature (Acts of 1924, Chapter 297); and the much discussed pension of $300 a year for life to Judge George Muter, Chief Justice of the Court of Appeals of Kentucky, referred to in a dictum in the opinion in Barker v. Crum, 177 Ky. 637,

198 S. W. 211, L. R. A. 1918F, 673, which pension was later withdrawn by the Legislature and never the subject of court litigation. Perhaps there have been many other similar pensions for life in Kentucky. Certainly there have been a great many gratuities for less than life. Acts of 1940, p. 897; Acts of 1938, Ch. 199; Acts of 1938, Ch. 241; Acts of 1930, Ch. 550; Acts of 1928, Ch. 595; Acts of 1916, p. 721; Acts of 1914, p. 509; Acts of 1914, p. 503; Acts of 1912, p. 663; Acts of 1906, p. 547; Acts of 1904, p. 327; Acts of 1904, p. 326; Acts of 1898, p. 151; Acts of 1896, p. 75; Acts of 1894, p. 370; Acts of 1892-3, p. 1544; Acts of 1887-8, Vol. 1, p. 261; Acts of 1885-6, Vol. 1, p. 273; and Acts of 1881-82, Vol. 1, p. 151. The beneficiaries of such gratuities have included a number of public officials.

It will thus be seen that the courts of this Commonwealth have not previously denied to the General Assembly its power to grant pensions to public officials in recognition of public services. In every instance where the question has been presented to the court, the power has been upheld. In all cases not reaching the courts, of which we have been advised, the ministerial officers of the Commonwealth and of the various municipalities involved have audited and paid such pensions without doubt or question. The court has stated that such "contemporaneous practical construction" should serve as a guide to the court in arriving at a solution of the constitutional questions presented.

In James, Auditor v. State University, 131 Ky. 156, 114 S. W. 767, 772, the court said:

"Looking to the contemporaneous practical construction of these two sections of the Constitution for guidance in arriving at a solution of the questions raised by appellant's final contention, we find that the Legislature has since the adoption of the present Constitution passed like acts to that under consideration appropriating large sums of money to such institutions as appellees, which have been approved by the sinking fund commissioners and other executive boards of the state, and audited and paid by its ministerial officers without doubt or question."

From all of the foregoing authorities, it is clear to the minority that the classification under Sections 1 and

2 of the Act is not arbitrary or unreasonable, in view of benefits to the public, the plain purpose of the General Assembly in passing this act, and the legislative and judicial precedents.

The majority concedes that "the official services of a judge of the Court of Appeals are unquestionably public services," and that, if the validity of the act under consideration depended solely upon a construction of Section 3, "there would be little question as to its validity," unless it offends some other provision of the Constitution. The "other" provision upon which the majority bases its conclusion is stated to be Section 246, and most of the opinion is devoted to a discussion of that section.

The pertinent portion of Section 246 provides that "No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services * * *." According to the majority "the words 'per annum' in Section 246 * * * *evidently* refer to the period during which the services were rendered, and not to the time of payment." (Italics ours.) In effect, the majority says that this plain language should be construed as follows: (a) the words "shall receive * * * per annum" necessarily mean "shall receive *at any time* for the services rendered *in one year*," (b) the words "as compensation for" necessarily include that which is given without obligation on the donor to give or to continue to give, and that which is received by the donee without obligation to perform any service in return, and (c) that the word "official" necessarily includes "public" services.

The majority justifies this interpretation, as well as its conclusion as to the invalidity of the act as a whole, by saying that "Sections 3 and 246 are harmonious and complement each other." To the minority this is the same as saying that while neither one will invalidate this act, yet the two together will accomplish that result. It does not seem logical to say that if neither Section 3, standing alone, nor Section 246, standing alone, renders the act invalid, the two when read together will do so. That result can be accomplished, if at all, only by substituting the word "official" (admittedly of narrower meaning) at the place where the word "public" (admittedly of broader meaning) appears in Section 3,

and substituting the broad term "public" for the narrow term "official," in Section 246, and also substituting the expression "as compensation for" at the place where the expression "in consideration of" appears in Section 3, and substituting the expression "in consideration of" at the place where the expression "as compensation for" appears in Section 246. As if not satisfied with this wholesale scrambling of the two sections, the majority then reads into Section 246, as thus revised, the three words "at any time" between the words "shall receive" and the words "per annum." In this manner, by judicial construction, there are created two entirely new sections of the Constitution, differing from the originals in sufficient essential qualities to render the act invalid, contrary to the admonition of the court to construe, not construct, the Constitution.

In District Board of Tuberculosis Sanitarium Trustees for Fayette County v. City of Lexington et al., 227 Ky. 7, 12 S. W. (2d) 348, 351, the court said:

"In questioning the validity of a statute or construing the language of the Constitution, courts proceed with great caution. 'We must never forget,' said Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. [316] 407, 4 L. Ed. 579, 'that it is a Constitution we are expounding.' In similar spirit we must always remember that we are construing, not constructing, a Constitution, and that whoever assails as unconstitutional an act of the General Assembly, where the legislative power of the people is reposed, labors under the burden of placing his finger on the section or provision of the Constitution which the act violates."

We cannot agree that any of the authorities cited by the majority hold that Section 246, expressly, or by necessary implication, forbids an ex-official within a properly designated class from receiving from the Commonwealth a gratuity in recognition of public services, where he has received an annual salary of $5,000 during the period he was in office.

In the case of Sanders v. Talbott, 255 Ky. 50, 72 S. W. (2d) 758, cited by the majority on this point, an official was given additional fees, including a "bonus" of $300, in order to increase his salary sufficiently to enable him to divide with other employees for whom no provi-

sion for compensation could be made under the law. This was admittedly a subterfuge. The court correctly held that this bonus should be counted in determining whether the official's compensation *received "in any one year"* had reached the maximum salary permitted by Section 246. It was paid to him during his term, the same as his regular fees, and the court would not have been justified in giving it a different classification for the purpose of excluding it from the total of the compensation received by him during that year. This item was only one of a number that the official contended should not be counted, and it very properly shared the same fate as the others. Furthermore, there was no classification by the General Assembly. The opinion approves the validity of an additional allowance (bonus) to a public official in recognition of his public services *even though he has already been paid a salary for those services*. We do not consider that the court held, or intended to hold, that a bonus declared and paid during the year of active service of an official to enlarge his annual compensation is the same as a gratuity paid after his term to provide security during the period following active service. We do not find where the court of this or any other State has ever accepted the Sanders case as such a precedent, or construed that opinion as so holding.

The majority also relies upon Robinson v. Elliott County Fiscal Court, 236 Ky. 63, 32 S. W. (2d) 554, but that case merely held that the regular salary of an official could be supplemented by special fees for extra work, even though the extra allowance was made at a different time from the order of the fiscal court fixing the regular salary.

The third case which the majority cites as supporting its view is Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133, which upheld the validity of the act creating the Judicial Council, the membership of which is drawn from the active judges of the Court of Appeals and of the various circuit courts of the Commonwealth. Certain duties were imposed upon the members and compensation therefor fixed. The court very properly held that no sufficient reason appeared why the active judges might not be paid for the additional services thereby imposed upon them, so long as the total annual salary of each did not exceed $5,000. Clearly, this additional

compensation was a salary, paid in return for additional services rendered, which, in the instances where the regular and special salaries combined would exceed $5,000, plainly involved Section 246, as written. Obviously, the Judicial Council case is no authority against the validity of the Judges Pension Act.

The last case relied upon in the majority opinion is Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897, which involved the special employment of a county attorney to render extra services for extra pay. The court held he was entitled to be so employed and to accept the extra pay, since the duties were not connected with his regular duties as county attorney for which he was paid the regular salary. Section 246 of the Constitution was not mentioned in the opinion, but if the extra pay had increased the official's total compensation beyond the $5,000 limit, there would have arisen a case for the application of the bar of Section 246, since obviously the services in both capacities were official, and all the compensation received was in payment for those services. So far as a proper decision of the Judges Pension case is concerned, no significance should be attached to the fact that the court in Slayton v. Rogers said, in effect, that the standard for determining whether certain duties were within the scope of existing employment was to ascertain whether the extra services were "outside of official duties and with which they have no affinity or connection, and which do not interfere with his official duties." Clearly, the court did not hold, nor intend to hold, that an official may not receive a gratuity unless he performs services therefor, nor unless those services are outside his official duties, because no such facts were involved in that case.

This disposes of all the cases relied upon in the majority opinion, so we shall now consider a few of the authorities supporting our view that Section 246 is not involved in this pension case.

In Board of Trustees of Policemen's Pension Fund v. Schupp, et al., supra, the court upheld the constitutionality of the policemen's pension law, notwithstanding the fact that it is possible for the total amount which may be received by a policeman to exceed $5,000, although the period of his active service may be limited to a single year. For example, if a policeman should be

permanently disabled during or at the end of his first year of service, he would draw, in addition to the salary paid him during his active service, a pension of $60 a month, as the court said, "during his remaining days." This pension, alone, would exceed $5,000 in less than seven years, and when his salary is also considered, the total would exceed $5,000 probably in five years. Even if the policeman were 82 years old when pensioned, he would have an expectancy in excess of five years, according to the Wigglesworth life tables. Certainly, the able counsel attacking the constitutionality of that pension case, and the members of the court considering the case, could not have completely overlooked that point of vulnerability, if it existed. On the contrary, it is apparent that the court had in mind the distinction between compensation which the city owed a policeman for official services (which is limited by Section 246) and a pension for public services (which is not limited by Section 246), for it said: "* * * it must be remembered this pension is not a debt of the city, but only a gratuity."

The same situation applies to the pensions now in operation in this state (other than for soldiers) such as the firemen's pensions, the policemen's pensions, and the teachers' pensions. Section 246 is not involved in old age pensions, of course, because the pensioner might not be an official, and the constitutional amendment permitting old age pensions was certainly not adopted for any such reason. However, the amendment was necessary to avoid the prohibition of Section 3, since old age pensions are available to those who have rendered no public service of any kind.

Also, it should be borne in mind that the proposed amendments to the Constitution which were voted down three times, mentioned in the arguments and briefs in this case, affected only salary limitations, and not pensions. No constitutional amendment sanctioning pensions has been submitted to the voters,—nor need it be, according to our construction of the language of the existing Constitution, if the pension is granted to a properly designated class, for public services.

If it were necessary to find in the Constitution a provision *authorizing* the benefits conferred by the act, this court would be justified in upholding the validity of Sections 1 and 2 under Section 244a of the Constitution, which reads as follows:

"The general assembly shall prescribe such laws as may be necessary for the granting and paying of old persons an annuity or pension."

The amendment does not fix a minimum age for beneficiaries of old age pensions nor provide any other qualification. The General Assembly has enacted legislation to grant old age pensions and has fixed the minimum age at 65 years (Section 3766bb-1, Kentucky Statutes). It will be noted that the minimum age requirement in Section 1 of the Judges' Pension Act is also 65. The fact that there are additional requirements in the act does not affect the applicability of Section 244a. Because the minimum age for eligibility on the Court of Appeals is 35 years and the minimum length of service before becoming eligible for benefits under Section 2 of the Act is more than sixteen years, an implied age qualification is fixed, since there is no possibility for a judge becoming eligible for benefits prior to reaching his fifty-second year. Although we are dealing with possibilities and not probabilities, it should be conceded by all that it is quite a rare case indeed for one to become a member of the Court of Appeals at such an early age and that the probabilities are that any judge who has completed as many as 16 years of continuous service will then have reached the age mentioned in Section 1 and in the old age assistance statute mentioned above. The fact that the title to the Judges' Pension Act does not indicate that it was intended simply as old age legislation does not affect the applicability of Section 244a, nor the duty of the court to uphold the act if valid. "If any possible reasonable basis can be conceived to justify the classification, then it should be upheld." Markendorf v. Friedman, 280 Ky. 484, 133 S. W. (2d) 516, 519, 127 A. L. R. 416.

However, it is not necessary to rely upon Section 244a (or any other provision of the Constitution) as *authority* for the Legislature to enact this legislation. The minority bases its conclusions upon their inability to find in the Constitution any *prohibition* against the exercise of its inherent powers by the General Assembly.

If Kentucky is to be denied the benefits of a reasonable pension system, let it not be by a strained judicial construction of the existing Constitution, but by a clear and unambiguous amendment, such as those found

in Alabama, Mississippi, Oklahoma, and South Carolina, where the Constitutions provide:

> "The Legislature shall not retire any officer on pay, or part pay, or make any grant to such retiring officer."

In view of our finding that this pension is a gratuity, and that the expression "in consideration of," appearing in Section 3, has a different meaning from the expression "as compensation for," appearing in Section 246, and that the framers of the Constitution must also have had a reason for using the term "public Services" in Section 3 and "official services" in Section 246, we, like the majority, find it unnecessary to devote further space to a discussion of Section 23, since no "office" is created by this act, nor of Section 26, since this act is not contrary to the Constitution, nor of Section 59 (18) since this is not a *special* act (See 24 Ky. L. J. 351), nor of Section 171, since the taxes required to pay these pensions are levied and collected for a public purpose, according to the Legislature's declaration of public policy, nor of Section 235, since these pensions are not "salaries," and so no salaries of public officers are being changed during the terms for which they were elected.

This also disposes of the cases so strongly relied upon by appellant, which merely involved a consideration of one or more of those sections. McCracken County v. Reed, 125 Ky. 420, 101 S. W. 348, 31 Ky. Law Rep. 31; Harlan County, etc., v. Brock, 263 Ky. 530, 92 S. W. (2d) 757, 759; Whitley County Board of Education v. Rose, 267 Ky. 283, 102 S. W. (2d) 28; Shannon, Auditor v. Combs, 273 Ky. 514, 117 S. W. (2d) 219; Jefferson County Fiscal Court v. Thomas, etc., 279 Ky. 458, 130 S. W. (2d) 60.

When the constitutionality of an act of the General Assembly is questioned, the court should confine itself within the long-established rules for its guidance, and proceed with the greatest possible caution, and never declare an act invalid until after every doubt has been resolved in its favor, and then only if it is able to say that the act is plainly repugnant to the Constitution.

As stated in Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, 830, by the court, through the revered Judge Wil-

liam Rogers Clay, whose long and outstanding public service must have been fresh in the memory of the General Assembly when this Pension Act was enacted:

"The right of courts to declare an act unconstitutional has been settled by a long line of decisions, from which there is no dissent; but, as the Legislature is a separate and independent department of government, invested by the Constitution with the power to make laws, *the courts have fixed certain rules for their own guidance,* in order that the power to declare an act invalid may not be exercised too freely. In the first place, the propriety, wisdom, and expediency of legislation is exclusively a legislative question, and courts are not at liberty to declare a statute invalid because, in their judgment, it may be unnecessary, or opposed to the best interests of the state. McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561. Another rule is that an act will not be declared void on the ground that it is opposed to the spirit supposed to pervade the Constitution, or is against the nature and spirit of the government, or is contrary to the general principles of liberty, or the genius of a free people. * * * A third rule is that courts should always proceed with the greatest possible caution, and should never declare an act invalid until after they have resolved every doubt in its favor, and are then able to say that it is plainly repugnant to the Constitution." (Italics ours.)

The same general principle is stated in this language in the case of Duke et al. v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839:

"It must not be overlooked that, when the power of the Legislature to enact a law is called in question, the sole duty of the courts is to look to the provisions of the federal and state Constitutions, and if they do not in express terms, or by necessary and proper implication, forbid the exercise of such power, they must uphold the validity of the act. Beyond the constitutional restrictions thus to be interpreted the only limits upon the state Legislature in enacting laws are its own wisdom, sound judgment, and patriotism. In case of doubt its action will not be interfered with by the courts. Respect for the wisdom of a co-ordinate department of

the government, as well as sound policy, forbids such interposition except upon clear and satisfactory grounds.''

To the same effect is Coleman v. Hurst, supra [226 Ky. 501, 11 S. W. (2d) 135], where the court said:

''It is firmly settled that all doubts as to the constitutionality of an act of the General Assembly should be resolved in favor of its validity.''

Appellant does not seriously question the wisdom of this particular policy, but directs criticism primarily to the possible results of creating a precedent.

Appellant's distrust of the people's use of their power when they discover that they have it, is not warranted by past experience. Innumerable opportunities to raid the treasury now exist, such as increasing the salary of all State employees to the limit of $5,000, or giving pensions to all war veterans, and not to Confederate veterans only, or to increase existing pensions to $5,000,—but the Legislature has not abused its power, and, if such prostitution of power were attempted such acts would have to meet the test of proper classification of beneficiaries. Also, the people would not tolerate such abuses longer than necessary to replace the offending legislators and repeal the objectionable law. Financial chaos or bankruptcy is no more at stake with the Judges Pension Law upheld than with it declared invalid.

It is unnecessary for this court to have or express an opinion on the question of public policy, as it affects the case under consideration or as it may affect the future course of legislation, since ''the propriety, wisdom, and expediency of legislation is exclusively a legislative question.'' Craig v. O'Rear, supra.

In Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512, 515, 137 Am. St. Rep. 347, the court said:

''There is no public policy which prohibits the Legislature from doing anything which the Constitution does not prohibit.''

Arduous labors with small pay during active service is enough to exact from these public spirited judges, without denying that ''reasonable security and financial independence'' which the people, through the Legisla-

ture sought by this act to "establish for those serving on the highest court of this State."

Beyond the foregoing expression of our views on all the legal questions before this court, we can do no more than conclude this dissent with the following pertinent language from the opinion in Coleman v. Hurst, supra:

"The court cannot reconcile itself to the view that a narrow construction should be placed upon the Constitution of Kentucky, which will hamstring the judiciary of the state and render it impotent to discharge its vital functions."

Special Judges Grassham and Wallace concur in this dissent.